J. Irwin Shapiro, J.
This is an action by 21 limited partners against all of the general partners of a syndicated real estate limited partnership (Crescent Plaza Associates) to recover their respective partnership investments totaling $131,500, which were lost when a purchase-money second mortgage in the sum of $500,000 covering the syndicate property was foreclosed by reason of default in payment of an installment of principal and interest due on a first mortgage.
Plaintiffs concede in their memorandum of law that this is neither a derivative action brought on behalf of the partnership nor a class action brought on behalf of the 127 limited partners, but merely an action at law brought on their own behalf to recover their respective investments in the partnership.
Plaintiffs ’ complaint alleges that in August, 1964 the general partners, “willfully and deliberately, caused [Crescent] to default in the payment ” of an installment of amortization and interest totaling $22,928.50 due on the first1 mortgage on the partnership property; that by reason of this default, and on the basis thereof, the second mortgagee commenced an action to foreclose the second mortgage on the property; that the general partners accepted service of the summons and complaint in that foreclosure action at the office of the attorneys for the second mortgagee and ‘ ‘ failed, neglected and. refused to appear in the foreclosure action or to serve any answer therein and permitted *565 the holder of the second mortgage to obtain, upon default, a judgment of foreclosure ”; that by reason thereof the partnership property was sold in foreclosure on November 12, 1964; and that the general partners withheld notice to plaintiffs of the pendency of the foreclosure and the sequential loss of the partnership property. It is further alleged in the complaint that the acts and conduct of the general partners in causing Crescent to default on the first mortgage, in failing to cure that default and in withholding from plaintiffs information relating to the pendency of the foreclosure action deprived plaintiffs of the opportunity to protect their investments by curing the default and constituted a willful and deliberate violation of defendants’ fiduciary duties and a design and scheme by them “ to entirely destroy [the partnership] and consequently the interest of plaintiffs ” in it. The complaint then demands judgment on behalf of each plaintiff individually in the sum each had invested in the partnership, the aggregate of which claims totals $131,500. The contribution of all of the 127 limited-partners was $510,000.
The objective operative facts upon which a disposition is to be made are not in dispute. The trial proof consists of a stipulation of agreed facts, written documents received in evidence, the examination before trial of general partner Lind and the trial testimony of general partner Siegel, who was called as a witness by plaintiffs. That proof established the following:
Crescent, the syndicated limited partnership, was formed in January, 1962 for the purpose of acquiring title to a nine-story office building with the $500,000 proceeds realized from the sale to the public of interests in the syndicate. A prospectus dated March, 1962 was issued. It described the limited partnership and the public offering of interests in the syndicate. In that prospectus it was stated that “ The Partnership has been advised that the building has maintained an occupancy rate of 100% over the past three years. The break even point to make distribution is 96% occupancy ”.
On or about May 1, 1962 Crescent acquired the office building by the payment of approximately $510,000 in cash and by taking title subject to two mortgages: a $1,000,000 first mortgage held by the Bowery Savings Bank (Bowery) which provided for constant quarter-annual payments of approximately $22,000 to cover amortization and interest, and a purchase-money .second mortgage of $510,000, on which interest of about $1,750 was payable monthly. At the time of closing the property was fully rented, except for one or two minor vacancies. Five of the nine floors in the building were occupied by the Board of Education *566 of the City of New York at an annual rent of $141,162, which was more than half of the annual rent roll of $263,000 for the entire building.
On July 31, 1964 the lease of the Board of Education expired and it moved from the property. In that same month two floors were rerented to the Bureau of School Lunches, the first month’s rent on which — $5,721.56 — was to become due in September. Including the latter tenancy, the property in August, 1964 was 55% occupied and had an annual rent roll of about $121,000. In July and August Crescent had cash .receipts of approximately $42,000 and made cash disbursements of slightly more than $41,000.
In August Crescent found itself with insufficient money to make the quarter-annual mortgage payment of about $22,000 then due to the Bowery. Thereupon Lind, one of the general partners, had discussions with the second mortgagees (whom Lind had never met before) in which he informed them that the major tenant had vacated five of the nine floors in the building; that therefore there would be insufficient money to operate the building; that since the prior April he had made efforts to secure new tenants and had succeeded in renting two of the five floors to a different division of the Board of Education, which would increase the cash income but not sufficiently to cover the operating cost; that in preparing the premises for the new tenant additional funds would have to be expended; that he had prepared a brochure and distributed it to almost every broker in the city in an effort to rerent the building; and that he intended to apply to the Bowery Bank for a moratorium on the first mortgage payments. Lind? also described to the second mortgagee the steps being taken to reduce expenses. Lind and another general partner, Siegel, then had discussions with the Bowery in an attempt to obtain a moratorium on the payment of interest and amortization for a period of time. The Bowery refused to consider a moratorium on interest but expressed a willingness to discuss a moratorium on amortization. To this Lind responded that an amortization moratorium would be of no help since Crescent was unable to pay the mortgage interest (about $60,000 a year) out of the income of the property until such time as the vacancies were rented.
On August 24, 1964 further discussion was had between Crescent and the second mortgagee, and to avoid the additional expense of a receiver in foreclosure, Crescent gave the mortgagee an assignment of rents, to which the latter was entitled under its mortgage. Immediately upon the execution of the assignment of rents, and without prior notice' to Lind and *567 Siegel, papers in an action -to foreclose the second mortgage, based on the default in making the payment due on the first mortgage on August 1, were served upon them. At that time the second mortgagee agreed that Crescent’s general partners could continue to assist in operating the building and to attempt to rent the vacant space and they assured Lind that, if the vacant space were rented, the foreclosure action and the assignment of rents would be withdrawn. For 30 or 60 days thereafter Crescent’s management branch continued to maintain its office in the building and to perform managerial services, such as attempting to rent vacant space, attending to complaints and supervising operations of the building. On November 12, 1964 the Crescent property was. sold in foreclosure to the second mortgagee, leaving Crescent with no assets.
As has been heretofore noted, this is not a derivative action brought by the limited partners on behalf of the partnership. (See, e.g., Riviera Congress Assoc. v. Yassky, 18 N Y 2d 540, 545.) Nor is this a representative or a class action brought by limited partners on behalf of themselves and the other limited partners similarly situated. (See, e.g., Lichtyger v. Franchard Corp., 18 N Y 2d 528, 531, 534; cf. Riviera Congress Assoc. v. Yassky, supra, p. 546.) In this action each of the plaintiffs asserts a cause of action at law against the general partners of the partnership for damages sustained by each by reason of the loss of their respective partnership investments, as a result of the foreclosure of a mortgage upon the sole asset of the partnership. The bases for the claims are the derelictions of duty alleged in the complaint. Defendants, in defense, make two contentions. Firstly, they contend that an action at law by a limited partner to recover the loss or diminution in value of his partnership investment does not lie in any circumstances and, .secondly, that plaintiffs not only failed to sustain the burden of establishing the allegations of conspiracy and wrongful intent set forth in their complaint but that the acts of the general partners which were established do not constitute actionable wrongs.' For the reasons hereinafter set forth, I concur in these contentions.
I
The rule is well settled, and has been reiterated time and time again, that neither partners nor joint venturers can sue each other at law for anything relating to the concerns of the partnership or joint enterprise until after a settlement and balance struck and express promise to pay. (Arnold v. Arnold, *568 90 N. Y. 580, 583; Herrick v. Guild, 257 App. Div. 341, 342; Duncan v. Bruce, 179 Misc. 992, 993; Langford v. Delalle, 136 Misc. 62, 63; also, see, Sohon v. Rubin, 282 App. Div. 691; Bankers Trust Co. v. Dennis, 256 App. Div. 495, 502, affd. 282 N. Y. 635; Weiser v. Burick, 47 Misc 2d 962; Lane v. Benedict, 6 Misc 2d 954, 955; Leitner v. Wass, 63 N. Y. S. 2d 350, 352; cf. Bassett v. American Meter Co., 20 A D 2d 956 and Mannaberg v. Herbst, 45 N. Y. S. 2d 197, 201, affd. 267 App. Div. 818, affd. 293 N. Y. 657.) In Squire v. Wing (35 Misc 2d 287, 288, affd. 17 A D 2d 835) the court dismissed the complaint in an action at law saying, that 11 it is still the general rule * * * that .suits between partners should be brought in equity, particularly for an accounting, and that an action at law may not be maintained until after an accounting and a balance struck. ” (Also, see, Dalury v. Rezinas, 183 App. Div. 456, 460, affd. 229 N. Y. 513.) The application of this principle to the fact situation in this case is particularly highlighted by Duncan v. Bruce (179 Misc. 992, supra). That was an action by one partner against the other to recover damages representing the plaintiff’s share of the partnership business destroyed by the defendant by maliciously wrecking and ripping apart the furniture and fixtures in the restaurant owned by the partnership and in converting some of the furniture. This situation, the court held, was connected with the partnership business and therefore came within the rule expressed in Herrick v. Guild (257 App. Div. 341, 342, supra) “ that suits between partners should be brought in equity, particularly for an accounting, and that an action at law may not be maintained until after an accounting and a balance struck ”.
Lichtyger v. Franchard Corp. (18 N Y 2d 528), the sole authority relied on by plaintiffs to sustain their cause of action, and its companion case of Riviera Congress Assoc. v. Yassky (18 N Y 2d 540, supra) did not vitiate the rule that an action at law by a limited partner for the loss of or the diminution in value of a partnership interest such as the instant one is not maintainable. That rule was no.t considered in those cases because it had no application to the factual situations there presented. Different from the situation here, the plaintiffs in those cases, as was noted in Briskin v. Glickman (267 F. Supp. 600, 603), “ sought damages for injury to the entity of which the individual plaintiffs were members, and not to the individuals themselves.” Moreover, the holding in those cases that a class or derivative action may be brought by a limited partner negates the thesis that an action at law such as the instant one may be brought.
*569 Lichtyger and Riviera were handed down by the Court of Appeals on the same day. In Lichtyger the action by a number of limited partners, based upon claims of ‘1 mismanagement ’ ’ and “waste”, was brought “on Behalf of Themselves and All Others Similarly Situated” (p. 531), and the court held that, just as “ stockholders could bring a representative action against the directors of a corporation for fraudulent waste and mismanagement of the corporate assets ” (p. 536), so are limited partners “ privileged to bring a class action for damages on behalf of all the other * * * limited partners ” (p. 534). (See, also, Riviera, supra; p. 546.) In Riviera, a number of limited partners brought a representative action in the name of the partnership to recover from the general partners money damages on behalf of the partnership (p. 545) and it was held that since the general partners would not sue because they were the very persons who would be liable for the damages, the limited partners should be permitted to initiate the necessary action on behalf of the partnership (pp. 547-548). This was the first case in this State that explicitly enunciated the concept that limited partners were privileged to maintain a class action on behalf of all limited partners or a derivative action on behalf of the partnership. So far as my research reveals, Klebanow v. New York Produce Exch. (344 F. 2d 294, revg. 232 F. Supp. 965), was the first ease in which it was held that a derivative suit could be maintained by a limited partner. (See note, Standing of Limited Partners to Sue Derivatively, 65 Col. L. Rev., 1463, 1478-1480.) This innovation in the law was codified in 1968 when the Legislature added sections 115-a, 115-b and 115-c to the Partnership Law (L. 1968, ch. 496.) There, for the first time, there was expressly created in a limited partner the right to bring a derivative action on behalf of a partnership (§ 115-a) and, significantly, the law attached conditions very similar to those governing derivative actions by corporate stockholders (cf. General Corporation Law, §§ 61-b, 64-67) for the bringing and maintenance of such actions.
With no prior specific decisional authority which could serve as the ultima ratio for a holding that a limited partner may bring a class or derivative action involving partnership affairs, the Court of Appeals, in Lichtyger and Riviera, reached the conclusion that such an action is maintainable by equating the status of corporate stockholders vis-á-vis corporate directors to that existing between limited partners and general partners. Thus, in Lichtyger, the court noted (p. 536) that in Ruzicka v. Rager (305 N. Y. 191, 197-198), it was stated in another context that a “ limited partner is in a ‘ position analogous to that of *570 a corporate shareholder ’ ” and then said (pp. 536-537): “ There is no basis or warrant for distinguishing the fiduciary relationship of corporate director and shareholder from that of general partner and limited partner. The principle is the same —- those in control of a business must deal fairly with the interests of the other investors and this is so regardless of whether the business is in corporate or partnership form. (See, e.g., Leibert v. Clapp, 13 N Y 2d 313, supra; Meinhard v. Salmon, 249 N. Y. 458.) As Chief Judge Cakdozo stated so eloquently in the Meinhard case (249 N. Y. 458, 464, supra), ‘ Not honestly alone, but the punctilio of an honor the most sensitive, is * * *
the standard of behavior. ’ A breach of this fiduciary duty adversely affects in the same way the interest of every investor who has no voice in the operations of the business and, being a wrong done to all, it should be susceptible of correction by legal action taken for the benefit of all. To permit stockholders to bring a representative suit but to deny the same privilege to limited partners would be highly unreasonable. (Cf. Riviera Congress Assoc. v. Yassky, 18 N Y 2d 540, supra.) ”
Extending this thesis logically, it would seem that a limited partner’s power to vindicate a; wrong done to the partnership entity and to attempt to enforce redress, for the consequential loss or diminution in value of his interest is no greater than that of a stockholder of a corporation. As to a stockholder, it is settled law that where a corporation suffers loss because of the acts of officers or others which diminishes the value of its shares- of stock or renders them valueless, a stockholder does not have a direct cause of action for such damage; in such case a stockholder only has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation. (Greenfield v. Denner, 6 N Y 2d 867, revg. 6 A D 2d 263 on the dissenting opinion in the Appellate Division; Niles v. New York Cent. & Hudson Riv. R. R. Co., 176 N. Y. 119, 123-124; All States Warehousing v. Mammoth Stor. Warehouses, 7 A D 2d 714.) I therefore hold, as a matter of law, that a limited partner, under the fact pattern here present, does not individually have a cause of action at law to recover for the loss of his partnership investment resulting from the acts of his general partners. Accordingly, the plaintiffs’ complaint must be "dismissed.
n
Although the procedural aspects of the matter are dispositive of this cause, the court will nevertheless pass on the factual *571 issues so that a new trial will not he necessary in the event the plaintiffs, if an appeal should be pursued, are successful in reversing this court on its procedural determination. (Discussion of factual issues omitted.)
Judgment is directed in favor of the defendants on the law and facts.