**Doris and Sydney LITMAN and David and Lillian Zelitch, Plaintiffs,**

**v.**

**PRUDENTIAL–BACHE PROPERTIES, INC., Related Tax–Exempt Bond Associates, Inc., and Bache Group, Inc. a/k/a Prudential Securities Group, Inc., Defendants.**

**Civ. A. No. 12137.**

Court of Chancery of Delaware, New Castle County.

Date Submitted: Feb. 10, 1992.
Date Decided: Feb. 13, 1992.

Carolyn D. Mack, and Robert J. Kriner, Jr., of Greenfield & Chimicles, Wilmington, and Michael J. Pucillo, of Greenfield & Chimicles, West Palm Beach, Fla., for plaintiffs.

Allen M. Terrell, Jr., Paul M. Altman, and Frederick L. Cottrell, III, of Richards, Layton & Finger, Wilmington, and Scott W. Muller, and Seth R. Lesser, of Davis Polk & Wardwell, New York City, for defendants Prudential–Bache Properties, Inc. and Bache–Group, Inc. a/k/a Prudential Securities, Inc.

James F. Burnett, of Potter, Anderson & Corroon, Wilmington, and Joel S. Weiss, of Esanu Katsky Korins & Siger, New York City, for defendant related Tax–Exempt Bond Associates, Inc.

## OPINION

CHANDLER, Vice Chancellor.

Plaintiffs, Doris Litman, Sydney Litman, David Zelitch and Lillian Zelitch, have instituted this proceeding as a class action lawsuit against defendants for breaches of their fiduciary duties. Plaintiffs have named Prudential–Bache Properties, Inc. ("Pru–Bache Properties"), Related Tax Exempt Bond Associates, Inc. ("Bond Associates") and Bache Group, Inc. and its successor Prudential Securities Group, Inc. ("Bache Group") as defendants.

At this juncture, defendants have moved to dismiss plaintiffs' claim. This is my decision on the motion. Part I of my decision provides a brief factual history. Part II addresses the motion to dismiss standard that I must apply. Part III addresses the issue of the nature of plaintiffs' claim. Finally, part IV contains my conclusion.

## I. FACTUAL HISTORY

Pru–Bache Properties and Bond Associates organized Summit Tax Exempt Bond Fund, L.P. ("Summit" or the "Partnership") under Delaware law pursuant to an Agreement of Limited Partnership (the "Partnership Agreement") dated December 18, 1985 and amended January 31, 1986. The Partnership Agreement named Pru–Bache Properties and Bond Associates as the general partners of the Partnership.

The Partnership Agreement provided that, as to the nature of the Partnership's business, "the Partnership shall invest in, hold, sell, dispose of and otherwise act with respect to first mortgage bonds secured by mortgage loans on various properties." (Complaint ¶ 9.) The Partnership Agreement also provided that the general partners were responsible for the management of the Partnership's business. Finally, the Partnership Agreement authorized the general partners to issue beneficial units certificates ("Units") to the public, which represent limited partnership interests. According to plaintiffs, the Unitholders hold substantially the same rights as limited partners, including the right to sue on their own behalf or on behalf of the Partnership.

From February 19, 1986 until March 3, 1986, the Partnership commenced a public offering of Units. During that period, the general partners sold 7.9 million Units for $20 each. Plaintiffs Doris and Sydney Litman each purchased 5000 Units in the initial offering. Also, plaintiffs David and Lillian Zelitch together purchased 750 Units in the initial offering.

Pursuant to the Partnership Agreement's description of the nature of its business, the general partners invested in first mortgage bonds which are, in essence, mortgage loans secured by first mortgages on the properties being developed. Local or state governments issue these bonds generally on multi-family residential apartment projects which third party developers are to develop. The use of local or state government bonding enables the income from the bonds to be tax free. However, the local or state government agencies who issue the bonds have no obligation to stand behind the bonds since the project's cash flow provides the sole source of the principal and interest payments.

On or about the time of the offering, the Partnership either had invested in or identi-

fied for investment in the following projects:

| Project | Location | Amount of First Mortgage Bond |
|---|---|---|
| The Mansions | Independence, MO | $19,450,000 |
| Clarendon Hills | Hayward, CA | 17,600,000 |
| Cypress Run | Tampa, FL | 15,750,000 |
| Thomas Lake Place | Eagan, MN | 12,975,000 |
| Greenway Manor | St. Louis, MO | 12,850,000 |
| Tempo–Northridge | Atlanta, GA | 12,400,000 |
| Sunset Terrace | Lancaster, CA | 10,350,000 |
| Greenhill | Harrisburg, PA | 8,900,000 |
| East Ridge | Mount Pleasant, SC | 8,700,000 |
| Cedar Creek | McKinney, TX | 8,100,000 |
| Martins Creek | Summerville, SC | 7,300,000 |

Indeed, within a year after the conclusion of the offering, the Partnership, in fact, had distributed the nearly $135 million in mortgage bond financing to these projects.

From this point, one can easily anticipate the tale. The real estate projects were riddled with cost overruns and construction delays. (*See* Complaint ¶¶ 28–53.) Further, the developers were delinquent in their payments of interest and principal which required the parties to restructure the terms of the bonds a number of times. (*See id.*) Ultimately, the delays, cost overruns and delinquencies resulted in a reduction of the Partnership's income, a reduction in the amount to be distributed to the limited partners and a reduction in the value of the Units. (*See id.* ¶¶ 33, 46, 50 and 53.)

## III. MOTION TO DISMISS STANDARD

Defendants have moved to dismiss plaintiff's claim. Although defendants are ambiguous as to how they are making the motion, the circumstances indicate that their motion is a Chancery Court Rule 12(b)(6) motion to dismiss for failing to state a claim for which I can grant relief.[1] In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded allegations of the complaint as true, must construe all inferences in favor of the plain-

tiff and must not dismiss the complaint unless it appears that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim. *See Grobow v. Perot*, Del.Supr., 539 A.2d 180, 187 n. 6 (1988); *Weinberger v. UOP, Inc.*, Del.Ch., 409 A.2d 1262, 1263–64 (1979) (citing *Fish Eng'g Corp. v. Hutchinson*, Del.Supr., 162 A.2d 722, 724 (1960)), *rev'd on other grounds*, Del.Supr., 457 A.2d 701 (1983).

## III. THE NATURE OF PLAINTIFFS' CLAIM

Defendants argue that plaintiffs' claim is derivative. That is, plaintiffs bring this action on behalf of all persons other than defendants and those related to defendants who owned the Units between the commencement of the initial public offering on February 19, 1986 and the general partners' announcement that the Partnership's quarterly distribution would be reduced from $.35 per Unit to $.22 per unit on December 20, 1989. Defendants argue that the injury allegedly inflicted on the class by the conduct of the general partners was an injury to the Partnership itself. Thus, defendants argue, the conduct of defendants only injured the limited partners to the extent of their proportionate

1. One of the circumstances that indicate that the motion is a Rule 12(b)(6) motion is that plaintiffs describe the motion as a Rule 12(b)(6)

motion and defendants fail to rebut this assertion in their Reply Brief. (*See* Pls. Brief at 1.)

interest in the Partnership.[2] Therefore, defendants contend, plaintiffs should have brought this suit as a derivative rather than a direct action. In fact, defendants argue, plaintiffs failure to bring their claim as a derivative suit requires me to dismiss their claim.

Plaintiffs contend that their claim is one properly brought as a direct rather than derivative action. That is, plaintiffs claim that defendants' misconduct directly injured their right to distributions from the Partnership.[3] Therefore, plaintiffs argue, they did not have to comply with the requirements of bringing a valid derivative suit. Accordingly, plaintiffs argue, I must deny defendants motion and not dismiss their claim.

Contrary to plaintiffs argument, *see supra* note 3, the determination of whether a fiduciary duty lawsuit is derivative or direct in nature is substantially the same for corporate cases as it is for limited partnership cases. That is, the duties of a general partner and a director are very similar. *See Boxer v. Husky Oil*, Del.Ch., 429 A.2d 995, 997 (1981); *Hibou, Inc. v. Ramsing*, Del.Super., 324 A.2d 777, 783 (1974). Therefore, it follows that the determination of the nature of the claims regarding a breach of those duties also should be very similar. *See generally Strain v. Seven Hills Assocs., L.P.*, 75 A.D.2d 360, 429 N.Y.S.2d 424, 431-32 (1980) (after noting that stockholders and limited partners hold similar positions within their respective entities, the Court looked to corporate law for guidance in determining the nature of a suit by a limited partner); *Field Enters. v. Gresser*, 160 Wis.2d 45, 468 N.W.2d 30 (TABLE) (1990) (text in Westlaw, at 19) (the Court looked to the corporate standard contained in *Bio-Scientific Laboratory, Inc. v. Todd*, 149 Ill.App.3d 845, 103 Ill.

Dec. 171, 174-75, 501 N.E.2d 192, 195-96 (1986) for the determination of whether a lawsuit was direct or derivative), *appeal denied*, Wis.Supr., 471 N.W.2d 509 (1991); 59A Am.Jur.2d *Partnership* § 1397 (1987) (author states that corporate law may be looked to for guidance in the determination of whether an action by a limited partner is derivative or direct). Therefore, throughout this decision, I rely on corporate as well as partnership case law for my determination of this lawsuit's nature.

■■■ "The distinction between derivative and individual actions rests upon the party being *directly* injured by the alleged wrongdoing." *Kramer v. Western Pac. Indus., Inc.*, Del.Supr., 546 A.2d 348, 351 (1988) (emphasis in original). In a derivative suit, a shareholder sues on behalf of the corporation for harm done to the corporation. *See Kramer*, 546 A.2d at 351. On the other hand, a shareholder may bring a direct action for injuries done to him in his individual capacity if he has "an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation." *Moran v. Household Int'l, Inc.*, Del.Ch., 490 A.2d 1059, 1070 (1985) (citations omitted), *aff'd*, Del.Supr., 500 A.2d 1346 (1985). That is, "[f]or a plaintiff to bring an individual action, he must be injured *directly* or *independently* of the corporation." *Kramer*, 546 A.2d at 351 (emphasis in original). Further, in determining whether a claim is derivative or direct in nature, I must look to the nature of the wrongs alleged in the body of plaintiffs' complaint, not plaintiffs' characterization or stated intention. *See Lipton*, 514 A.2d at 1078.

The gist of plaintiffs' complaint is that

---

**2.** Since the only issue I must address in deciding this motion is the nature of plaintiffs' claim, I presume that plaintiffs' claim is substantively valid. *See Lipton v. News Int'l Plc*, Del.Supr., 514 A.2d 1075, 1079 n. 4 (1986); *Avacus Partners, L.P. v. Brian*, Del.Ch., C.A. No. 11001, 1990

WL 161909, Allen, C. (Oct. 24, 1990), Mem.Op. at 14.

**3.** In support of their analysis at oral argument, plaintiffs contended that there is a distinction between the determination of the nature of a breach of fiduciary duty lawsuit in the context

the general partners [4] breached their fiduciary duties by inadequately investigating and monitoring investments and by placing their interests in fees above the interests of the limited partners. (Complaint ¶¶ 1 and 60.) Notwithstanding plaintiffs' assertion that defendants' misconduct directly injured the limited partners' distribution rights (*see* Pls. Brief at 14), plaintiffs do not make any argument that the general partners breached a distribution agreement in their complaint. Rather, plaintiffs' true argument is that the alleged misconduct resulted in diminished income to the Partnership, diminished distributions to Unitholders and a diminished value of the Units. (Complaint ¶¶ 1, 53, 61, and 62.)

■ By its own terms, the initial injury for which plaintiffs seek redress was to the Partnership. That is, plaintiffs complain that the Partnership received a lower amount of income because of the alleged misconduct. In other words, the defendants inflicted the alleged injury directly upon the Partnership. Therefore, defendants' misconduct damaged plaintiffs only to the extent of their proportionate interest in the Partnership. Clearly, this was not a direct injury to the limited partners or one that existed independently of the Partnership.

The second alleged injury, the diminished distributions, is merely a different way of repeating the first claim. That is, the cause of this injury was that the Partnership had less income on account of defendants' alleged misconduct (*see* Complaint ¶ 1), not that the general partners had somehow failed to abide by an agreement with the limited partners to distribute certain amounts to the limited partners. Thus, the defendants did not inflict the injury of lower distributions directly on the plaintiffs. Rather, the injury flowed from a direct injury to the Partnership (*i.e.*, the lower income of the Partnership). Therefore, I find that the injury of lower distri-

butions was not a direct injury to plaintiffs or one that existed independently of the partnership.

■ As to the final injury, the diminution in the value of the Units, this clearly is not a direct injury. The diminution in the value of their interests flows from the damage inflicted directly on the Partnership. "Mismanagement which depresses the value of stock is a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action." *Bokat v. Getty Oil Co.*, Del.Supr., 262 A.2d 246, 249 (1970) (citation omitted). "Thus, where a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature." *Lewis v. Spencer*, Del.Supr., 577 A.2d 753 (1990), Order at 4; *see also Cede & Co. v. Technicolor, Inc.*, Del.Supr., 542 A.2d 1182, 1188 n. 10 (1988).

■ None of the harm for which plaintiffs seek redress exists independently of the Partnership or was inflicted directly on the limited partners. Plaintiffs' reliance on *Lichtyger v. Franchard Corp.*, 18 N.Y.2d 528, 277 N.Y.S.2d 377, 223 N.E.2d 869 (1966) and *In re USACafes, L.P. Litig.*, Del.Ch., 600 A.2d 43 (1991) does not persuade me to hold otherwise. In *Lichtyger*, the Court held that a representative class action was proper for claims by limited partners that the general partners' misconduct injured their rights to payments under the partnership agreement. However, the holding of this case seems to be only that limited partners may bring representative class action suits on behalf of all limited partners. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989); *Blattberg v. Weiss*, 61 Misc.2d 564, 306 N.Y.S.2d 88, 93 (1969). Further, to the extent it allows a direct action for indirect injuries from general partners'

---

of a corporation from a breach of fiduciary duty lawsuit in the context of a limited partnership.

**4.** Note that defendant Bache Group has never been a general partner of Summit. Nonetheless, plaintiff has named Bache Group as a

defendant because it purportedly controlled Pru–Bache Properties and allegedly is liable under an agency and/or respondeat superior theory. (*See* Complaint ¶¶ 4, 59, 60 and 63.)

misconduct, it is contrary to settled Delaware law and subsequent New York law that limited partners must pursue an indirect injury through a derivative action. *See Kramer,* 546 A.2d at 351; *Bokat,* 262 A.2d at 249; *Moran,* 490 A.2d at 1070; *Re v. Weksel,* 130 A.D.2d 640, 515 N.Y.S.2d 568, 569 (1987), *appeal denied,* 71 N.Y.2d 803, 522 N.E.2d 1068, 527 N.Y.S.2d 769 (1988); *Strain,* 429 N.Y.S.2d at 431–32; *Blattberg,* 306 N.Y.S.2d at 94–95. Therefore, *Lichtyger* does not dissuade me from my decision that plaintiffs' claim is derivative in nature.

As to *In re USACafes, L.P. Litig.,* the parties did not raise and the Court did not address the issue of whether the claim was direct or derivative and, therefore, whether it was proper for limited partners to bring their claim as a direct action. Therefore, it also does not dissuade me from my conclusion that plaintiffs claim is derivative in nature.

■ Since plaintiffs' claim is derivative in nature, Delaware law requires plaintiffs either to make a demand on the general partners or allege in the complaint why such a demand was not made.[5] Plaintiffs have done neither. The assertions in the complaint that the general partners mismanaged the Partnership are insufficient to show that demand should be excused due to the inapplicability of the business judgment rule to the general partners' conduct because the assertions do not state with particularity why they did not make a demand.[6] Therefore, since plaintiffs have failed to meet the requirements of the Limited Partnership Act, they lack standing to prosecute this action. *See Kramer,* 546 A.2d at 351. As a result, they would not be entitled to relief under any set of facts which could be proved to support their claim. Thus, I grant defendants' motion and dismiss plaintiffs' claim for failing to state a claim for which I can grant relief.

## IV. CONCLUSION

■ The injuries for which plaintiffs' claim seeks redress are injuries that defendants' alleged misconduct did not inflict directly on plaintiffs. Rather, the alleged misconduct directly injured the Partnership. Therefore, plaintiffs' injuries solely result from their proportionate interest in the Partnership. Injuries that do not exist independently of the Partnership or that are not directly inflicted on the limited partners are derivative claims. Since plaintiffs have not complied with the requirements of bringing a valid derivative claim, they lack standing. Therefore, plaintiffs fail to state a claim for which I can grant relief. Thus, I grant defendants' motion and dismiss plaintiffs' claim.

An Order has been entered in accordance with this Opinion.

## ORDER

For the reasons set forth in this Court's Opinion in this case on this date, it is

ORDERED that plaintiffs' complaint in this action is DISMISSED for failure to state a claim for which relief can be granted.

---

**5.** 6 *Del.C.* § 17–1001 (Supp.1990) provides that

[a] limited partner may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed.

**6.** 6 *Del.C.* § 17–1003 (Supp.1990) provides that

[i]n a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort.