# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ALEKSANDER DIETRICHSON, )
                                  )
           Plaintiff, )
                                  )
            v. )          C.A. No. 11965-VCMR
                                  )
MARTIN G. KNOTT, and )
NXGENED, LLC, a Delaware limited )
liability company, )
                                  )
          Defendants. )

## MEMORANDUM OPINION

Date Submitted: January 20, 2017
Date Decided: April 19, 2017

Robert W. Mallard and Alessandra Glorioso, DORSEY & WHITNEY LLP, Wilmington, Delaware; *Attorneys for Plaintiff.*

David S. Eagle and Sally E. Veghte, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, Delaware; *Attorneys for Defendants.*

**MONTGOMERY-REEVES, Vice Chancellor.**

In this action, Aleksander Dietrichson, one member of a Delaware limited liability company, alleges that another member, Martin G. Knott, breached his fiduciary duties to the company and Dietrichson by improperly paying himself an unauthorized salary and misappropriating the proceeds of an asset sale. Plaintiff alleges that this behavior also deprived him of contractually-mandated distributions and wasted corporate assets.

Defendants—Knott and the company—move to dismiss the complaint, arguing that all of plaintiff's claims are derivative and that plaintiff has failed to make demand or allege demand futility. Alternatively, defendants contend that plaintiff's fiduciary duty claims are barred by the contract claims; the complaint fails to state a claim for waste; and plaintiff's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing should be dismissed because the operating agreement's provisions address this issue.

For the reasons discussed herein, I conclude that plaintiff's fiduciary duty claims are exclusively derivative, and, as plaintiff has not alleged demand futility or that demand was made and wrongfully refused, the claims are dismissed. I also conclude that plaintiff's claims for breach of contractual provisions relating to mandatory distributions are unripe, and because express contracts govern the right to distributions, there is no claim for unjust enrichment. Therefore, the complaint is dismissed in its entirety.

1

## I.    BACKGROUND[1]

All facts are taken from the verified complaint (the "Complaint") and the NxGenEd, LLC operating agreement (the "Operating Agreement").[2]

### A.    Facts

Plaintiff Aleksander Dietrichson and Defendant Martin G. Knott formed NxGenEd, LLC ("NxGenEd" or the "Company") on September 25, 2014, and each is a 50% member, director, and officer of the Company. Dietrichson and Knott formed the Company for the purpose of marketing intellectual property, including the X-Ray Analytics software platform. Dietrichson contributed the intellectual property to the Company. Knott allegedly would use his expertise and contacts in the field to gain investors and customers for the Company. Saint Bernard, Inc. ("Saint Bernard") and X-Ray Research SRL ("X-Ray Research") provided the services to develop the Company's intellectual property. Dietrichson is the director of Saint Bernard and owns a majority interest in X-Ray Research.

---

[1]    Unless otherwise defined in this opinion, all capitalized terms are incorporated by reference from NxGenEd LLC's operating agreement, attached as Exhibit A to the Complaint (hereinafter, the "Operating Agreement").

[2]    The Court may consider documents outside the pleadings if "(1) the document is integral to a plaintiff's claim and incorporated in the complaint or (2) the document is not being relied upon to prove the truth of its contents." *Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013).

Under a purported oral agreement, X-Ray Research further developed the X-Ray Analytics software for the Company and received $18,500 per month for those services. Saint Bernard and the Company entered into a services agreement under which Saint Bernard would provide services as an independent contractor and all work product (and corresponding rights) created by Saint Bernard would be the property of the Company.

Under the Operating Agreement, Dietrichson and Knott, as members, are entitled to certain distributions, but no salary. The Operating Agreement also requires the board of directors to approve any salary to a director.[3] In the event of a deadlock, "the vote upon such matter will be determined reasonably and in good faith by Knott."[4] The board of directors has never approved a salary for any director or employee, and Knott never requested a salary from the board. The board has never approved an operating budget for the Company.

Around February 2015, the Company faced a liquidity shortage. It had only $1,500 in cash on hand, no revenue, and "a total monthly cash burn of $45,800."[5]

---

[3] The Complaint does not identify the makeup of the board beyond Dietrichson and Knott, but briefing suggests that there are four board members. Defs.' Opening Br. 7.

[4] Operating Agreement 6. Dietrichson alleges that Knott is the controlling member because he possesses "right to break any Deadlock votes." Pl.'s Answering Br. 13-14, n. 9; Compl. ¶ 21.

[5] Compl. ¶ 30.

3

During this time, the Company terminated its contract with Saint Bernard but continued to use X-Ray Research and the X-Ray Analytics software platform. Dietrichson allegedly offered to buy out Knott to regain ownership of the intellectual property of the Company, but Knott rejected that offer. Knott instead proposed terms for a sale of the Company's assets to Blackboard, Inc. ("Blackboard"). The Complaint alleges that, under the proposed deal terms for the sale (the "Deal Terms"), Blackboard would buy the Company's assets, and the proceeds from the sale would be distributed in the following order: (1) creditors; (2) members of the board other than Dietrichson and Knott; and (3) Dietrichson, receiving two-thirds, and Knott, receiving one-third. After these distributions, Knott would resign from the Company and cease all involvement.

On June 25, 2015, Blackboard and the Company executed an asset purchase agreement (the "Asset Purchase Agreement") in which Blackboard purchased substantially all of the Company's assets for $250,000, excluding the assumption of liabilities. The payment would be composed of a $175,000 up-front payment and a "Holdback Amount" of $75,000 that Blackboard would pay within 30 days after the first anniversary of the closing date (the up-front payment and the Holdback Amount, collectively, the "Sales Proceeds").

On August 10, 2015, Dietrichson sent a letter requesting copies of bank statements, explanations of payments, and confirmation that Knott had not paid

4

Company funds to himself, his family, or any affiliates (the "August 10 Letter"). None of the financial information requested in the August 10 Letter was provided. On September 14, 2015, counsel for the Company, Mark A. Saudek from the firm Gallagher Evelius & Jones LLP ("Gallagher"), replied stating Knott had not made distributions to himself, his family, or affiliates but had paid himself a salary in compliance with Maryland and federal law.

On October 12, 2015, Dietrichson made a demand on the Company under Section 18-305(a) of the Delaware Limited Liability Company Act and Section 8.1 of the Operating Agreement to inspect the Company's books and records.

On November 12, 2015, Dietrichson filed a Verified Complaint for Inspection of Business Records in this Court (the "Books and Records Action"). In response to the demand, Knott sent Dietrichson copies of the Company's bank statements with annotations from Knott. The statements show $137,398.91 in payments to Knott dating back to January 2015. The statements also show transfers of $28,488.18 to Gallagher in July and October 2015, after the sale to Blackboard, (the "Gallagher Transfers"). The balance of the Company's account as of October 29, 2015, was $3,009.71. Knott allegedly has not provided and denies the existence of any engagement agreement between the Company or Knott and Gallagher. Knott has not provided billing statements from Gallagher to show whether these services were for Knott in his individual capacity or "were paid as

5

Knott's portion of the Operating Agreement's related legal fees for which he already received a credit."[6]

Knott's response also contained an assertion that both he and Dietrichson approved the Company's budgets and that Dietrichson has copies of those budgets. Dietrichson allegedly possesses only a pro forma budget developed before the Company was formed, which Knott used as a marketing tool during demonstrations to potential investors. The board never approved that budget. It was not an operating budget, and it was based on the assumption the Company would engage in revenue-earning operations through 2017. It does not include expenses such as payments for services to Saint Bernard or X-Ray Research. Further, the Company never relied on any budget because it never generated revenue.

### B. Procedural History

On February 5, 2016, Dietrichson filed the Complaint in this Court against Knott and the Company. On March 30, 2016, Defendants filed the motion to dismiss. Following briefing by the parties, on September 16, 2016, this Court held oral argument on the motion to dismiss. The parties submitted supplemental briefing on January 20, 2016.

---

[6]     *Id.* ¶ 60.

## II.     ANALYSIS

### A.     Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), this Court must "accept as true all of the well-pleaded allegations of fact and draw reasonable inferences in the plaintiff's favor."[7] While the Court must draw all reasonable inferences in the plaintiff's favor, it is not "required to accept as true conclusory allegations 'without specific supporting factual allegations.'"[8] "[D]ismissal is inappropriate unless the 'plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'"[9]

When analyzing whether a claim is direct or derivative, "[t]he Court will independently examine the nature of the wrong alleged and any potential relief to make its own determination of the suit's classification. This determination is for the Court to make based upon the body of the complaint; plaintiffs' designation of the suit is not binding."[10] In order to determine whether a claim is direct or

---

[7]     *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001)).

[8]     *Id.* (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65-66 (Del. 1995)).

[9]     *Id.* (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (footnotes omitted)).

[10]     *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 2003 WL 203060, at *3 (Del. Ch. Jan. 21, 2003), *aff'd in part, rev'd in part*, 845 A.2d 1031 (Del. 2004); *see also*

derivative, the Delaware Supreme Court held in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.* that the Court must apply a two-part test: "(1) who suffered the alleged harm (the company or the suing stockholder, individually); and (2) who would receive the benefit of any recovery or other remedy (the company or the stockholder, individually)."[11]

With respect to derivative actions, Court of Chancery Rule 23.1 requires that the complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."[12] The Delaware Limited Liability Company Act provides that:

> A member or an assignee of a limited liability company interest may bring an action in the Court of Chancery in the right of a limited liability company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action or if an

---

*Bakerman v. Sidney Frank Imp. Co., Inc.*, 2006 WL 3927242, at *19 (Del. Ch. Oct. 16, 2006).

[11] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004); *see also Bakerman*, 2006 WL 3927242, at *19 (applying in a limited liability context). "The derivative suit is a corporate concept grafted onto the limited liability company form." *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 293 (Del. 1999). Thus, "case law governing corporate derivative suits is equally applicable to suits on behalf of an LLC," and I may "look to corporate case law to determine the proper method for distinguishing" between derivative and direct actions. *Kelly v. Blum*, 2010 WL 629850, at *9 (Del. Ch. Feb. 24, 2010).

[12] Ct. Ch. R. 23.1.

8

> effort to cause those managers or members to bring the action is not likely to succeed.[13]

Thus, a complaint must "set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a manager or member or the reasons for not making the effort."[14] In other words, a plaintiff member or assignee of a limited liability company attempting to bring a derivative action must allege with particularity either that she made demand and it was wrongfully refused or why such demand would be futile.

## B. Dietrichson's Fiduciary Duty and Waste Claims Are Derivative Under *Tooley*

Dietrichson asserts in the Complaint that Knott breached his fiduciary duties as a member and director of the Company by misappropriating the Sales Proceeds from the sale of substantially all of the Company's assets. Specifically, Dietrichson alleges that Knott caused the Company to transfer $137,398.91 of the Sales Proceeds to himself as a salary without the necessary approval of the board and caused the Company to pay Knott's personal legal fees. Dietrichson contends these actions constitute self-dealing, bad faith, waste, and fraudulent and willful misconduct. He argues that Knott breached his duties of care and loyalty as a director and member of the Company. Because Dietrichson's claims plead harm to

---

[13] 6 *Del. C.* § 18-1001.

[14] *Id.* § 18-1003.

9

NxGenEd and request relief for NxGenEd, his claims are exclusively derivative, and because he has not pled particularized facts that he made demand and demand was wrongfully refused, or that demand was futile, his claims are dismissed.

### 1. The Company suffered the alleged harm and would receive the benefit of any recovery

Under the first prong of *Tooley*, the Court must "look to the nature of the wrong," and the "claimed direct injury must be independent of any alleged injury to the corporation."[15] Claims are treated as derivative when they "naturally assert that the corporation's funds have been wrongfully depleted, which, though harming the corporation directly, harms the stockholders only derivatively so far as their stock loses value."[16]

A review of the Complaint makes clear the corporation suffered the alleged harm.[17] The Complaint states that the action seeks to "challenge and remediate Mr. Knott's improper dissipation of the *Company*'s assets"[18] and that Dietrichson "seeks to avoid and recover Mr. Knott's improper transfers of the *Company*'s

---

[15] *Tooley*, 845 A.2d at 1039.

[16] *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016) (quoting *Protas v. Cavanagh*, 2012 WL 1580969, at *6 (Del. Ch. May 4, 2012)) (internal quotation marks omitted).

[17] Compl. ¶¶ 68-72, 114-116.

[18] *Id.* ¶ 4 (emphasis added).

10

assets."[19]  The Complaint further alleges Knott "expend[ed] *Company* funds" and "dissipate[d] substantially all the *Company*'s assets."[20]  Specifically, the Complaint asserts that Knott "caused the *Company* to transfer $137,398.91 to himself as a purported salary . . . as well as cause[d] the *Company* to make payments to a law firm . . . ."[21]  Similarly, under the waste claim, Dietrichson contends that Knott "caused the *Company* to waste valuable assets."[22]  Dietrichson has not explained how he would be harmed directly by these alleged breaches of fiduciary duties independent from the harm to the Company.

Under the second prong of *Tooley*, "[w]here all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature."[23]  Similar to the first prong, an examination of the plain language of the remedies sought in the Complaint reveals that any recovery must flow directly to the Company.  The Complaint seeks *restitution for the*

---

[19]     *Id.* ¶ 6 (emphasis added).

[20]     *Id.* ¶¶ 68-69, 80-82 (emphasis added).

[21]     *Id.* ¶ 5 (emphasis added).

[22]     *Id.* ¶ 114 (emphasis added).

[23]     *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016) (quoting *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008)).

*Company*, and a "constructive trust *in favor of the Company*."[24] Dietrichson admits in his answering brief that any "funds returned to the Company will enable the Company to pay its creditors."[25] Thus, the "principal recipient of any recovery"[26] would be the Company, not Dietrichson. Dietrichson would only receive his portion of recovery as an indirect benefit and *pro rata* according to his membership interest under the Operating Agreement.[27]

### 2. The fiduciary duty and waste claims are not dual-natured

Dietrichson argues that even if the claims are not direct, they are, at the very least, "dual-natured" claims, and he argues that the Delaware Supreme Court recently re-affirmed the existence of dual-natured claims in *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*.[28] In *Brinckerhoff*, the Supreme Court stated that in "unique circumstances" it has recognized that certain claims have both direct and derivative aspects—namely when the action involves a controlling stockholder and transactions "that resulted in an improper transfer of both economic value *and*

---

[24]    Compl. 26.

[25]    Pl.'s Answering Br. 11.

[26]    *CMS Inv. Hldgs., LLC v. Castle*, 2015 WL 3894021, at *8 (Del. Ch. June 23, 2015).

[27]    Operating Agreement § 6.1.

[28]    Pl.'s Supplemental Br. 1; *Brinckerhoff*, 152 A.3d 1248.

voting power from the minority stockholders to the controlling stockholder."[29]  The

Supreme Court declined

> the invitation to further expand the universe of claims
> that can be asserted "dually" to hold here that the
> extraction of solely economic value from the minority by
> a controlling stockholder constitutes a direct injury.  To
> do so would deviate from the *Tooley* framework and
> "largely swallow the rule that claims of corporate
> overpayment are derivative" by permitting stockholders
> to "maintain a suit directly whenever the corporation
> transacts with a controller on allegedly unfair terms."[30]

Dietrichson does not allege any dilution of voting power in this case; therefore,

Dietrichson's arguments regarding *Brinckerhoff* fail.

### 3.    Dietrichson has failed to allege that demand was made and wrongfully refused or that demand is futile

Dietrichson relies solely on the characterization of his claims as either direct

or dual-natured.  Thus, Dietrichson did not make demand on the board and does

not attempt to establish demand futility.  Because I find Dietrichson's fiduciary

duty and waste claims are solely derivative, the claims are dismissed for failure to

make demand.[31]

---

[29]    *Brinckerhoff*, 152 A.3d at 1262.

[30]    *Id.* at 1264 (quoting *Caspian Select Credit Master Fund Ltd. v. Gohl*, 2015 WL 5718592, at *5 (Del. Ch. Sept. 28, 2015)).

[31]    *See* 6 *Del. C.* § 18-1003.  Likewise, any claims for breach of the implied covenant of good faith and fair dealing related to Knott's alleged misappropriation of funds or payment of an unapproved salary are dismissed.

13

## C. Dietrichson's Claims Seeking a Distribution Are Unripe

Dietrichson also asserts that Knott breached the Operating Agreement, the Deal Terms, and the implied covenant of good faith and fair dealing by purportedly depriving Dietrichson of guaranteed distributions. Relying on *Allen v. El Paso Pipeline GP Co., LLC*[32] and *CMS Investment Holdings, LLC v. Castle*,[33] Dietrichson argues that his claim for guaranteed distributions is direct.[34] *Allen* provides that there is a distinction between "suits for breach of the limited partnership agreement and suits challenging the discretion afforded to the general partner."[35] Thus, there is a difference between "(i) a claim that the general partner had breached a contractual provision governing distributions and (ii) a generic theory that the general partners had 'inadequately investigated and monitored investments.'"[36] This reasoning was applied in the limited liability context in *CMS*, where this Court held that allegations that a certain class of unitholders were denied promised distributions "in accordance with a specified schedule" under the

---

[32] 90 A.3d 1097 (Del. Ch. 2014).

[33] 2015 WL 3894021 (Del. Ch. June 23, 2015).

[34] Pl.'s Answering Br. 9-12.

[35] *Allen*, 90 A.3d at 1109.

[36] *Id.* (quoting *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 16 (Del. Ch. 1992)).

limited liability company agreement "give rise to direct claims against the individuals who allegedly caused the breaches to occur."[37]

But even if Dietrichson is entitled to guaranteed distributions, and therefore states a direct claim, he argues that Knott's actions "caused Dietrichson to lose-out on the distribution of two-thirds of the Sales Proceeds after a liquidation event."[38] And in further support of his argument that he is entitled to a "required distribution,"[39] Dietrichson cites to Section 6.5 of the Operating Agreement, entitled "Liquidation or Dissolution."[40] Dietrichson, however, does not allege anywhere in the Complaint or in the briefing that the Company is in dissolution, that a "liquidation event" has occurred, or that he is entitled to a liquidating

---

[37] *CMS*, 2015 WL 3894021, at *8.

[38] Pl.'s Answering Br. 9, 11.

[39] *Id.* at 10.

[40] *Id.* at 9; Operating Agreement § 6.5.

15

distribution under either contract.[41]    Therefore, I dismiss the contract claims as

unripe.[42]

### D.    The Allegations of Unjust Enrichment Fail to State Claim

"Unjust enrichment is 'the unjust retention of a benefit to the loss of

another, or the retention of money or property of another against the fundamental

principles of justice or equity and good conscience.'"[43]    "A claim for unjust

enrichment is not available if there is a contract that governs the relationship

between parties that gives rise to the unjust enrichment claim."[44]   Thus, "'when the

complaint alleges an express, enforceable contract that controls the parties'

relationship . . . a claim for unjust enrichment will be dismissed.'"[45]   If the contract

---

[41]    Furthermore, Knott raises questions as to whether any funds would remain to pay Dietrichson under the purported Deal Terms, as any Sales Proceeds must first pay creditors and members of the board other than Dietrichson and Knott before any amount is distributed to the members.  Compl. ¶ 96.  In a separate complaint filed in this Court, Saint Bernard and X-Ray Research, two Dietrichson-affiliated entities, allege that in total the Company owes them $172,326.34 as creditors. *Saint Bernard, Inc. & X-Ray Research SRL v. Knott & NxGenEd LLC*, C.A. No. 12363-VCMR, ¶¶ 45-46 (Del. Ch. May 19, 2016).

[42]    Any claim for breach of the implied covenant of good faith and fair dealing as it relates to the distribution claims is dismissed as unripe.

[43]    *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) (quoting *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999)).

[44]    *Kuroda*, 971 A.2d at 891.

[45]    *Id.* (quoting *Bakerman v. Sidney Frank Importing Co.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, at *657

is the measure of the plaintiff's right, "there can be no recovery under an unjust enrichment theory independent of it."[46] Dietrichson admits that a claim for unjust enrichment is not available where an express contract governs the claims.[47] Although not the model of clarity, Dietrichson alleges that two express contracts work together to govern the right to distributions.[48] Therefore, the claim for unjust enrichment fails.

## III.     CONCLUSION

For the reasons discussed above, I conclude that Counts I, II, and VI are derivative, and Dietrichson has failed to allege demand futility or that demand was made and wrongfully refused. Counts III and IV are unripe. Count V is both derivative and unripe. Count VII fails to state a claim. Therefore, I grant the motion to dismiss in its entirety.

---

& n.72 (Del. Ch. Sept. 2, 2008); *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *5 & n.41 (Del. Ch. May 16, 2007)).

[46]     *Id.* (quoting *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)).

[47]     Pl.'s Answering Br. 21-22.

[48]     *See* Compl. ¶¶ 86-101; Pl.'s Answering Br. 9-11, 22.