WILLIAM E. JACKSON, Plaintiff v. GEORGE F. MARSHALL, FREDERICK INVEST-
MENT CORPORATION, KH INVESTMENT LIMITED PARTNERSHIP, and
GLENMOOR LIMITED PARTNERSHIP, Defendants

No. COA99-1156

(Filed 7 November 2000)

**1. Partnerships— breach of fiduciary duty—derivative claim belonging to partnership**

The trial court did not err by concluding that plaintiff limited partner had no standing to bring an individual non-derivative action against the general partner of a limited partnership for an alleged breach of fiduciary duty for mismanagement arising out of the general partner's decisions regarding a loan transaction resulting in a reduced value of the limited partnership shares, because: (1) a limited partner may only sue directly in two instances where he alleges a separate and distinct peculiar and personal injury to himself not suffered by the other shareholders, or the injuries arise out of a special duty running from the alleged wrongdoer to the limited partner; (2) all limited partners are similarly affected in this case by the repayment of the loan and by the general partner's business decision to keep the property unencumbered; and (3) plaintiff has not alleged that he has an individual cause of action as a result of a special duty owed to him, and the duty of a general partner to the limited partners in a limited partnership is a duty to discharge responsibilities according to the business judgment rule.

**2. Unfair Trade Practices— partnership—alleged egregious breach of fiduciary duty—no duty owed to limited partner**

Plaintiff limited partner's claim for unfair and deceptive trade practices arising out of defendants' alleged egregious breach of fiduciary duty cannot be sustained because defendants have not breached any duty owed to plaintiff.

**3. Partnerships— breach of fiduciary duty—no damages—limited partner had no standing to sue**

The trial court's conclusion that plaintiff limited partner is not entitled to damages is affirmed because plaintiff had no standing to sue the general partner of a limited partnership individually for an alleged breach of fiduciary duty.

4. **Partnerships— rescission—failure to join necessary party—restitution precluded by parties' change in position**

The trial court did not err by dismissing plaintiff limited partner's claim for rescission of the partnerships based on plaintiff's failure to join the other limited partner who was a necessary party, because: (1) restitution is precluded since the parties changed their position in reliance on these partnerships; and (2) the alleged dismissal of the claim need not be addressed since the trial court received evidence on the issue and determined on the merits that rescission was inappropriate.

Judge HORTON concurring in the result.

Appeal by plaintiff from judgment entered 29 December 1998 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 21 August 2000.

*Nigle B. Barrow, Jr. and Alice E. Mazarick, for plaintiff-appellant.*

*Tharrington Smith, L.L.P., by Wade M. Smith, Randall M. Roden and Daniel W. Clark, for defendant-appellees.*

EAGLES, Chief Judge.

Plaintiff William E. Jackson (hereinafter "plaintiff") appeals from judgment entered after a bench trial, concluding that defendants had not breached any duties owed to the plaintiff.

The trial court's findings of fact tend to show the following. Plaintiff and defendant Marshall entered into several limited partnerships. Plaintiff sought defendant Marshall's investment in a limited partnership venture to acquire and re-develop the Kiddshill Plaza Shopping Center (hereinafter "KHP"). In order to obtain Marshall's investment, plaintiff offered to structure Marshall's investment so that before any partnership earnings would be distributed, Marshall's investment would be repaid with a 15% return per year (hereinafter "15% priority return"). This arrangement for repayment of defendant Marshall's investment was used in the Kiddshill Investment Limited Partnership (hereinafter "KHI") agreement as well as the KHP agreement. The agreements provided that the remaining profits would be divided 60% to defendant Marshall, 40% to plaintiff, after the payment of the 15% priority return.

The trial court found as a fact that neither plaintiff nor defendant Marshall were pleased with the format of KHP's partnership agreement. When forming KHI, defendant Marshall and plaintiff engaged a law firm, with which plaintiff had an ongoing relationship, to prepare the partnership agreement. Neither party reviewed the agreement until a few hours before they were to sign it, although both parties signed the agreement that day. Plaintiff testified that prior to signing the agreement, he read and understood the agreement. Plaintiff also testified he noticed the four month buy-sell provision in the agreement. KHI's general partner is Frederick Investment Corporation (hereinafter "FIC") whose sole shareholder and president is defendant Marshall. KHI's limited partners are defendant Marshall, plaintiff, and John Englert—who is not a party to this litigation. After KHI was formed, plaintiff acted in conformity with the agreement, sought to benefit from the agreement's buy-sell provision, and in March of 1995, executed an amendment to the agreement, thereby ratifying the terms of the KHI agreement. *Housing Inc. v. Weaver*, 37 N.C. App. 284, 300, 246 S.E.2d 219, 228 (1978).

The third partnership in dispute here is the Glenmoor Limited Partnership (hereinafter "Glenmoor"). Glenmoor's managing partner is FIC, and its limited partner is KHI. At the same time the parties signed the KHI partnership agreement and purchased property for KHI, plaintiff suggested that the parties purchase the Glenmoor property. After the Glenmoor partnership was formed, plaintiff assigned his contract rights in the Glenmoor property to KHI, the limited partner. In order to finance the purchase of the Glenmoor property, Glenmoor borrowed from General Credit Limited Partnership, a partnership whose general partner is FIC and its limited partner is defendant Marshall. The trial court made the following findings of fact with regard to this loan.

38. In addition, Jackson was informed of the terms of the proposed General Credit loan in advance and was offered the opportunity to arrange more advantageous financing. Jackson objected to the loan origination fee and it was reduced from ten percent to the two percent figure Jackson agreed was reasonable. Jackson's other objection was to the length of the term of the loan, but the loan was paid off without difficulty well in advance of the maturity date and there was no actual or potential harm to the partnership from the term of the loan. The loan was essential to enable Glenmoor to purchase the property. Under the circumstances, the loan did not constitute a breach of fiduciary duty and

Jackson is not entitled to any relief as a result of the loan or its terms.

Supplemental 53. Jackson also objected to a loan made by General Credit to Glenmoor to facilitate the purchase of the Glenmoor property. At the time that the decision to make the loan was made, Glenmoor was three weeks from the closing date and needed to borrow more than $2 million. The only asset Glenmoor had to offer as security for the loan was undeveloped land. Marshall "considered the purchase of that property within a short period of time to be a risky purchase." John Englert testified that "it is very difficult, literally impossible to finance vacant land. Institutions rarely ever do it." Joseph Kalkhurst, in response to a question about whether a commercial lender would have made the loan on the Glenmoor property stated, "Not on that property, standing on its own." Marshall similarly testified that "it would have been impossible to obtain a non-recourse loan from any source on raw land." Mr. Kalkhurst also remarked during his testimony that "banks certainly were not interested in lending money on raw land at the time." Richard Barta testified that when commercial lending is not available, the reasonable terms from a private lender are "whatever the private lending market will bear, and, you know, that's situational." When Marshall as an officer of the General Partner, made the decision to obtain a loan from General Credit, he "made that disclosure to the limited partners prominently identifying that the General Credit—that General Credit transaction was not an arms length transaction."

For the Glenmoor property to be profitable, the property needed to be rezoned and leased. This effort required extensive participation by defendant Marshall, Englert and plaintiff. The General Credit loan was satisfied on 18 April 1996 by the capital contributions of Englert, FIC and defendant Marshall. Currently the Glenmoor property is without encumbrances and is earning $400,000 a year in rental income.

The trial court ruled that the plaintiff was not entitled to recission of the partnerships and as a limited partner, was not entitled to participate in the management and control of the partnerships. Further, the trial court ruled that the complaint raised no claim of duress, that the defendants had not engaged in any unfair and deceptive trade practices and that all of plaintiff's alleged breach of fiduciary duty claims should have been brought as a derivative action. Plaintiff appeals.

JACKSON v. MARSHALL

[140 N.C. App. 504 (2000)]

## I. Derivative Claims

[1] We first consider whether the trial court properly concluded as a matter of law that the General Partner's fiduciary duty is owed to the partnership and that any claims for breach of fiduciary duty are derivative, belonging to the partnership. Our Supreme Court in *Energy Investors Fund, L.P. v. Metric Constructors Inc.*, 351 N.C. 331, 525 S.E.2d 441 (2000), applied established principles of corporate law to limited partnerships. *Id.* The court in *Energy* found:

> Thus, limited partners are somewhat analogous to shareholders . . . . Information rights and fiduciary duties owed to limited partners are similar to those owed to shareholders. Limited partners, like shareholders, may bring derivative suits on behalf of the business entity against errant management. Limited partner interests are generally treated like corporate shares in the securities laws.

*Id.* at 334-35, 525 S.E.2d at 443 (quoting III Alan R. Bromberg & Larry E. Libstein, *Bromberg and Libstein on Partnership* § 11.01(c) (Supp. 1999-2)); *see also, Moore v. Simon Enters.*, 919 F.Supp. 1007, 1012 (N.D. Tex. 1995). In North Carolina, it is well established that a controlling shareholder owes a fiduciary duty to minority shareholders. *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951). Our Supreme Court has also held that the status of limited partners in a partnership is the same as the status that exists between corporate shareholders and the corporation. *Energy*, 351 N.C. at 335, 525 S.E.2d at 445. In *Litman v. Prudential-Bache Properties, Inc.*, 611 A.2d 12 (Del. Ch. 1992), the Chancery Court of Delaware faced the exact question that is before us today. *Id.* at 13. The limited partners sued the general partners for mismanagement resulting in a reduced value of their limited partnership shares. The Chancery Court dismissed the direct action because the limited partners' claim was derivative. The Chancery Court held that a limited partner may only sue directly in two situations: (1) where a plaintiff alleges a "separate and distinct" "peculiar and personal" injury to himself not suffered by the other shareholders, or (2) the injuries arise out of a special duty running from the alleged wrongdoer to the plaintiff, e.g., a right to vote. *Litman*, 611 A.2d at 15; *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997). Unless plaintiff, as a limited partner, alleged facts sufficient to fit into one of these two exceptions, his claims are derivative and he has no standing to bring this action as an individual, non-derivative claim.

A. "Separate and Distinct" Exception.

In *Energy*, the Supreme Court held that "[a]n injury is peculiar or personal to the shareholder if 'a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation.' " *Energy*, 351 N.C. at 335, 525 S.E.2d at 444; *Litman*, 611 A.2d at 16. Here, the purported injury of which plaintiff complains also affects John Englert and any other future limited partners. Plaintiff asserts that the loan from General Credit to Glenmoor at an interest rate of 15% with an origination fee of 2% affects plaintiff adversely. However, the question is not whether the plaintiff is in a less favorable position than the general partner, but whether the plaintiff is in a less favorable position when compared to all other limited partners. *Energy*, 351 N.C. at 336, 525 S.E.2d at 444; *Litman*, 611 A.2d at 16. All limited partners, including John Englert, are similarly affected by the re-payment of this loan at 15%. All limited partners are similarly affected by the general partner's business decision to keep the property unencumbered; e.g., not to refinance, even at a lower rate. Thus, any complaint about this loan transaction is properly actionable only in a derivative action.

B. "Special Duty" Exception.

Our Supreme Court has also affirmed the grant of a Rule 12(b)(6) motion in favor of defendants on claims plaintiffs made as individual shareholders under the "special duty" exception to the general rule. *Energy*, 351 N.C. at 337, 525 S.E.2d at 445; *see Litman*, 611 A.2d at 16. "This court has previously held that the existence of a special duty could be established by facts showing that defendants owed a duty to plaintiff that was personal to plaintiffs as shareholders . . . ." *Energy*, 351 N.C. at 336, 525 S.E.2d at 445. The *Litman* plaintiffs failed to allege sufficient facts from which the fact finder could conclude that defendants owed to plaintiff-shareholders a duty that was personal and distinct from the duty defendants owed the corporation. *Litman*, 611 A.2d at 16. All of plaintiff's allegations indicated that any duty defendants owed to plaintiff was purely derivative of defendants' duty to properly manage the corporation. *Energy*, 331 N.C. at 335, 525 S.E.2d at 444; *see Litman*, 611 A.2d at 16.

Here, plaintiff has not alleged that he has an individual cause of action as a result of a "special duty" owed to him. *Id.* We hold that the duties owed by a director of a corporation to the corporation's shareholders are likewise similar to the duties a general partner of a limited liability partnership owes to its limited partners, since a limited

partner in a limited partnership "is analogous to a shareholder." The Business Corporations Act requires that a director discharge his duties "(1) [i]n good faith; (2) [w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) [i]n a manner he reasonably believes to be in the best interests of the corporation." N.C. Gen. Stat. § 55-8-30(a) (1990) (amended 1993). *State v. ILA Corp.*, 132 N.C. App. 587, 601-02, 513 S.E.2d 812, 821 (1999). N.C. Gen. Stat. § 55-8-30(d) states that "a director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with this section." N.C. Gen. Stat. § 55-8-30(d) (1990) (amended 1993); *ILA Corp.*, 132 N.C. App. at 601, 513 S.E.2d at 821. The General Assembly in its official comment to this section of the General Statutes stated that certain phrases in the statute embody "the long traditions of the common law." *Id.* Accordingly this act has been interpreted as codifying the common law theory of the business judgment rule. *Id.* We hold that in a limited partnership the duty of the general partner to the limited partners is a duty to discharge his responsibilities according to the business judgment rule. This is the duty defendants Marshall and FIC owe here to the partnerships and their limited partners.

The trial court in finding of fact number 33, found that the general partner did not act in any way that harmed the interest of the partnerships. Plaintiff's allegations of "shortcomings" of the general partner were broadside, conclusory and "non-specific" in nature. The trial court found these allegations all related to actions and matters within the business judgment and scope of the authority of the general partner. *ILA Corp.*, 132 N.C. App. at 601, 513 S.E.2d at 821. The trial court found as a fact that the few claims which may have alleged a breach of fiduciary obligation were not supported by plaintiff's own testimony. The trial court found as a fact that:

> 30. The serious claims of fraud, attempts by Marshall to squeeze Jackson out, obtain partnership assets for himself or otherwise wrongfully deprive Jackson of his interest in the partnerships are not supported by <u>any credible evidence</u>. Even Jackson's own testimony does not support such claims, although he frequently used harsh terms to describe his belief as to the purpose of the conduct of Marshall and the General Partner. The actions themselves, viewed in the context of all the evidence, do not support Jackson's extreme conclusions.

(Emphasis added.)

We hold that plaintiff failed to allege an injury that is "separate and distinct" to him, or that arose from a breach of a "special duty" owed to plaintiff by defendants. On this record, we hold that plaintiff, as a limited partner, had no standing to bring an individual, non-derivative action against the general partner of the limited partnership.

## II. Miscellaneous

[2],[3],[4] Since we hold that the plaintiff has not alleged an individual, non-derivative cause of action, and that all of his claims were brought individually, we find it unnecessary to address the remaining issues at length. We note that plaintiff-appellant did not assign error to any of the trial court's findings of fact. The basis of plaintiff's claim for unfair and deceptive trade practices was the alleged egregious nature of the defendants' alleged breaches of fiduciary duty. *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999). Since defendants have not breached any duty owed to the plaintiff, a claim for unfair and deceptive trade practices in this case cannot be sustained. The plaintiff objected to the trial court's conclusion that plaintiff failed to prove he was entitled to damages. Because we hold plaintiff had no standing to sue individually, we affirm the trial judge's conclusion as to damages. Plaintiff also assigned error to the trial court's dismissal of plaintiff's claim for recission because plaintiff failed to join a necessary party, John Englert. The trial court found in finding of fact number 11 that the parties changed their position in reliance on these partnerships and as a result of this change of position, restitution is precluded. Since the trial court received evidence on the issue of recission and determined on the merits that recission was inappropriate, we need not address the alleged dismissal of the claim.

For the reasons stated, the judgment of the trial court is

Affirmed.

Judge MARTIN concurs.

Judge HORTON concurs in the result with separate opinion.

Judge HORTON concurring in the result.

While I do not join in that portion of the majority opinion holding that "plaintiff, as a limited partner, had no standing to bring an individual, non-derivative action against the general partner of the limited partnership," I concur in the result reached by the majority.

This case is not before us on a motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim, but is an appeal from a lengthy bench trial in which numerous exhibits were entered. Although the able trial court states in its judgment that the plaintiff's claims based on breach of fiduciary duty should have been brought as derivative actions, the trial court heard voluminous testimony and found as a fact that plaintiff's "serious claims of fraud, attempts by Marshall to squeeze Jackson out, obtain partnership assets for himself or otherwise wrongfully deprive Jackson of his interest in the partnerships are not supported by any credible evidence," including plaintiff's own testimony. Thus, it appears that the trial court permitted plaintiff to offer evidence on his direct, non-derivative claims based on alleged breaches of fiduciary duty, but found after weighing all the evidence that plaintiff had not offered any believable evidence which supported his claims.

On this record, I do not believe we need to reach the issue of plaintiff's right to maintain his action for breach of fiduciary duty as a direct, non-derivative action, nor do we need to discuss the sufficiency of the allegations of plaintiff's complaint. I concur in the result reached by the majority as to plaintiff's claims based on an alleged breach of fiduciary duty by defendants, and concur fully as to plaintiff's other claims for relief.