Levin v. Jacobson, 2015 NCBC 108.

STATE OF NORTH CAROLINA

WAKE COUNTY

ERIC LEVIN, HOWARD SHAREFF,
SHAREFF & ASSOCIATES, DDS PA,
individually and derivatively in the right
of LAKEBOUND FIXED RETURN
FUND, LLC, and SILVERDEER OLDE
LIBERTY, LLC,

         Plaintiffs,

v.

HOWARD A. JACOBSON, CILPS
ACQUISITION LLC, and PROVINCE
GRANDE OLDE LIBERTY LLC,

         Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 12062

**ORDER AND OPINION ON MOTIONS
FOR SUMMARY JUDGMENT**

{1}    **THIS MATTER** is before the Court upon the Motion for Summary Judgment filed by Plaintiffs Eric Levin ("Levin"), Howard Shareff ("Shareff"), and Shareff & Associates, DDS PA, individually and derivatively in the right of Lakebound Fixed Return Fund, LLC ("Lakebound") and SilverDeer Olde Liberty, LLC ("SDOL") (collectively, "Plaintiffs") ("Motion for Summary Judgment") and the Cross-Motion for Summary Judgment filed by Defendants Howard A. Jacobson ("Jacobson"), CILPS Acquisition LLC ("CILPS"), and Province Grande Olde Liberty LLC ("PGOL") (collectively, "Defendants") ("Cross-Motion for Summary Judgment," collectively with Plaintiffs' Motion for Summary Judgment, the "Motions") in the above-captioned case.

{2}    After considering the parties' briefs in support of and opposition to Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment, the appropriate evidence of record, and the arguments of counsel at the hearing held on the Motions, the Court hereby **DENIES** Plaintiffs' Motion for Summary Judgment and **GRANTS in part** and **DENIES in part** Defendants' Cross-Motion for Summary Judgment.

*Parry Tyndall White, by James C. White and Michelle M. Walker, for Plaintiffs Eric Levin, Howard Shareff, and Shareff & Associates, DDS PA, individually and derivatively in the right of Lakebound Fixed Return Fund, LLC and SilverDeer Olde Liberty, LLC.*

*Robinson Elliott and Smith, by William C. Robinson and Katherine Armstrong, for Defendant Province Grande Olde Liberty LLC.*

*Howard A. Jacobson, for Defendants Howard A. Jacobson and CILPS Acquisition LLC.*

Bledsoe, Judge.

## I.

## PROCEDURAL HISTORY

{3}     This case involves a lengthy procedural history stretching over five years and containing numerous parties, some of which are no longer involved in this lawsuit.   The initial Complaint was filed in August 2010 by fourteen plaintiffs alleging six original causes of action against four defendants.

{4}     The Second Amended Complaint includes only the parties now reflected in the caption and six causes of action.[1]   Although the Second Amended Complaint does not specifically label which Defendants should be held liable for each of Plaintiffs' causes of action, it appears to the Court that Plaintiffs allege:   (1) constructive trust and accounting against all Defendants; (2) breach of fiduciary duty against all Defendants; (3) constructive fraud against Mr. Jacobson; (4) conversion against all Defendants; (5) quantum meruit against Mr. Jacobson; and (6) permanent injunctive relief against all Defendants.  (Second Am. Compl. ¶¶ 76–106.)

---

[1] Although Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment were both filed before the Second Amended Complaint, it appears from the parties' filings that the parties intend for their previously-filed Motions to apply to the Second Amended Complaint. The Court also allowed the parties to file supplemental briefing on the Motions.  Accordingly, the Court deems the parties' Motions to apply to Plaintiffs' Second Amended Complaint. *See Emergys Corp. v. Consert, Inc.*, 2012 NCBC LEXIS, at *3 n.4 (N.C. Super. Ct. April 5, 2012).

{5}     This Court[2] held a hearing on the Motions, at which Plaintiffs and Defendant PGOL were represented by counsel, and Defendant Howard A. Jacobson, a member of the North Carolina State Bar, represented himself and CILPS.

{6}     The time for briefing, arguments, and further submissions has now passed and the Motions are ripe for resolution.

II.

RELEVANT FACTUAL BACKGROUND

{7}     While findings of fact are not necessary or proper on a motion for summary judgment, "it is helpful to the parties and the courts for the trial judge to articulate a summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62, 693 S.E.2d 250, 252 (2010) (quotations and citation omitted).  Therefore, the Court limits its factual recitation to the undisputed material facts necessary to decide the Motion, and not to resolve issues of material fact.

{8}     The individual Plaintiffs, Levin and Shareff, are investors in three limited liability investment companies established by Jacobson through SilverDeer LLC ("SilverDeer"):  (i) Lakebound, (ii) SilverDeer Carolinas Caribbean I LLC, and (iii) SDOL.  (Second Am. Compl. ¶ 13.)

{9}     On or about September 21, 2007, Levin invested $500,000 in Lakebound, and on or about April 16, 2009, Shareff also invested $500,000 in Lakebound.

{10}    In acknowledging the numerous complexities of the Jacobson-affiliated LLCs, the Motions focus on three factual scenarios:  (1) the alleged Lakebound Ponzi scheme, (2) the purported transfer of $100,000 from Lakebound to CILPS, and (3) the purported transfer of $188,000 from Lakebound to PGOL.

A.      The Alleged Ponzi Scheme

{11}    Jacobson and his former partner, Richard Deckelbaum, created SilverDeer, LLC ("SilverDeer") in 2003 as the first step in building a private equity business with a focus on real estate development.  (Jacobson Aff. ¶ 4.)   Jacobson and

---

[2] This case was originally designated a mandatory complex business case under N.C. Gen. Stat. § 7A-45.4(b) and assigned to the Honorable John R. Jolly on September 7, 2010.  The case was subsequently reassigned to the undersigned by Order Reassigning Case on January 6, 2015.

Deckelbaum structured their investments so that one LLC would hold title to a certain real estate asset, while another LLC would own the interests in that asset. SilverDeer was the holding company that typically held profit interests or "carried interests," which Jacobson describes as ownership interests received as a result of financing the transactions. (Jacobson Aff. ¶¶ 4a–b.)

{12} Jacobson and Deckelbaum later created SilverDeer Management, LLC ("SilverDeer Management"), whose purpose was to provide management services—including accounting, payroll, property management, and other services—to SilverDeer and the other investment LLCs. (Jacobson Aff. ¶ 4c.) At the time of its creation, Jacobson and Deckelbaum owned equal interests in SilverDeer Management and were its only members or managers.

{13} Jacobson and Deckelbaum also created two investment funds, one of which was Lakebound. (Jacobson Aff. ¶ 4a.) Lakebound was designed as a high-yield, fixed-return vehicle that would invest in real estate projects and offer a fixed return to investors. Lakebound's Private Placement Memorandum indicated that members could expect a return of 10% on capital contributions. (Shareff Aff. Ex. A 1.) SilverDeer Management, which was in turn managed by Jacobson and Deckelbaum, served as Lakebound's initial manager. However, Lakebound's most recent annual report on file with the North Carolina Secretary of State identifies Jacobson as Lakebound's manager. (Lakebound Fixed Return Fund, LLC Annual Report, attached to Pls.' Mem. Supp. Summ. J., hereinafter "Lakebound 2009 Annual Report.") Plaintiffs allege that Lakebound was set up with the singular goal of generating cash for Jacobson and Deckelbaum. (Pls.' Mem. Supp. Summ. J. 1.)

{14} The first transaction contemplated for Lakebound was the purchase of a portion of SilverDeer's ownership interest in Olde Liberty Golf and Country Club ("Olde Liberty"). (Jacobson Dep. v.1, 102; Shareff Aff. Ex. A. 10.) Olde Liberty is a single-family residential community and golf course located in Franklin County, North Carolina. (Second Am. Compl. ¶ 22.) In 2005, prior to the development of the golf course and the residential community, Olde Liberty Club, LLC ("OLC LLC") purchased the Olde Liberty property. (Wolf Aff. ¶ 5.) OLC LLC financed the

purchase with a loan from a hedge fund and later secured contracts with builders for the sale of existing and future lots on the Olde Liberty property. (Wolf Aff. ¶¶ 5–6.) The contracts were sizeable enough that, if paid in full, they would have generated sufficient funds to pay off OLC LLC's existing and anticipated debt and to return all of the investors' capital contributions. (Wolf Aff. ¶ 7.) One of the main investors in OLC LLC was SDOL, which held a $2,600,000 equity share in the company and was entitled to priority profit share of $3,000,000. (Wolf Aff. ¶¶ 7, 15.) SilverDeer in turn owned a share of SDOL. (Jacobson Aff. Ex. G.)

{15} On the same day that Lakebound filed its Articles of Organization with the North Carolina Secretary of State, Lakebound and SilverDeer entered into a Membership Interest Purchase Agreement whereby SilverDeer sold an ownership interest in SDOL, and thus, through SDOL, an interest in Olde Liberty, to Lakebound for $2,500,000, of which $750,000 was to be paid at closing. Lakebound was to pay SilverDeer the remaining $1,750,000 out of its capital contributions and cash flow, although no schedule or deadline was in place. (Shareff Aff. Ex. G.) Jacobson signed on behalf of both SilverDeer and Lakebound. Lakebound's Private Placement Memorandum identified this as a conflict of interest transaction. (Shareff Aff. Ex. A 13.)

{16} The ownership interest in Olde Liberty ("Olde Liberty Interest") had a projected profit value of $3,500,000, which meant that Lakebound could theoretically realize profits over time on the sale of Olde Liberty Club lots. Plaintiffs allege that the transaction had only the immediate effect of supplying SilverDeer—and its manager Jacobson—with immediate access to cash that it otherwise would not have seen for years. (Pls.' Mem. Supp. Summ. J. 6–7.)

{17} A similar transaction occurred in December of 2007, when SilverDeer sold to Lakebound its interests in SilverDeer Paradise Resort, LLC, and Paradise Resort, LLC, which owned a condominium development in Myrtle Beach, South Carolina. (Jacobson Aff. ¶ 85.) SilverDeer sold Lakebound this interest for $3,100,000, of which $0 was due at closing. The remainder (the "Paradise Resort Debt") was owed to SilverDeer in installments, although the agreement included no

payment schedule or deadlines. Jacobson again acted as signatory for both parties to the transaction. (Jacobson Aff. Ex. R.) Eventually, when Paradise Resort could not pay Lakebound in cash, it conveyed title to some condominiums to Lakebound. (Jacobson Dep. v.1, 68.)

{18} Bank statements for Lakebound show that as funds were invested into Lakebound, they were quickly transferred into SilverDeer's own accounts. (Mense Dep. v.1, 41, Exh. 39.) Plaintiffs allege that Lakebound raised a total of $1,965,000 between September 2007 and March 2008 but never used the funds to invest in the manner described in its formation documents. (Pls. Mem. Supp. Summ. J. 5–6.) Plaintiffs argue that as investors paid money into Lakebound, Jacobson immediately funneled funds into SilverDeer and paid returns to old investors with this new money. (Pls.' Mem. Supp. Summ. J. 6.)

{19} In the real estate and financial downturn of 2008, OLC LLC's revenue streams dried up. The builders who held contracts to buy Olde Liberty lots withdrew, and OLC LLC was unable to find other interested buyers. (Wolf. Aff. ¶ 23.) OLC LLC was unable to repay its investors, including SDOL, and it defaulted on loans owed to:

     i. Fifth Third Bank, for approximately $4,800,000;

     ii. Paragon Commercial Bank ("Paragon"), for approximately $6,450,000; and

     iii. Interim-HZ Funding, for approximately $6,800,000.

{20} On November 11, 2008, Jacobson, on behalf of SilverDeer Management, sent a letter notifying Lakebound investors that it was suspending distributions, noting that Olde Liberty Club was its primary asset. (Shareff Aff. Ex. E.)

B.     The CILPS Foreclosure

{21} In mid-2009, Interim-HZ Funding began foreclosing on the portion of the Olde Liberty Club that secured its loan. (Jacobson Aff. ¶ 47.) After the foreclosure occurred, a series of upset bids were placed. Diana Padgett, Jacobson's wife, submitted a bid on behalf of a related LLC. (Jacobson Aff. ¶ 53.) Ultimately, Erik Troan placed the prevailing upset bid of $2,000,000. (Jacobson Aff. ¶ 59.) He later

assigned this bid to CILPS Acquisition, LLC ("CILPS"), in which Jacobson invested $100,000 for a 5.5% ownership interest. (Jacobson Aff. ¶ 63.)

{22} Plaintiffs allege, and Jacobson admits, that the $100,000 he personally invested in CILPS came from Lakebound. In October of 2009, Lakebound received some funds as a result of the sale of some Paradise Resort condominiums. (Pls.' Mem. Supp. Summ. J. 12.) Plaintiffs contend that Jacobson directed $100,000 from Lakebound to SilverDeer and then to himself. (Pls.' Mem. Supp. Summ. J. 12.) Jacobson does not dispute this and contends that the transfer represented a valid payment of the Paradise Resorts Debt. (Jacobson Aff. ¶ 94.)

C.    The PGOL Foreclosure

{23} In late 2008 and early 2009, OLC LLC worked with Paragon to stave off foreclosure against the part of the Olde Liberty Club secured by the $6,450,000 loan. Jacobson and a different group of investors formed Province Grande Olde Liberty, LLC ("PGOL") to provide capital to prevent foreclosure. (Jacobson Aff. ¶ 34.) PGOL and Paragon negotiated an agreement by which Paragon loaned PGOL funds to buy the Olde Liberty Club assets out of foreclosure for the same amount owed by OLC LLC. (Pls. Mem. Supp. Summ. J. 13.) Paragon allegedly made this loan because PGOL assured Paragon that it had new investors willing to put capital into the project. (Pls. Mem. Supp. Summ. J. 14.) PGOL paid Paragon $236,761.56 at closing to purchase the land out of foreclosure. (Mense Dep. Ex. 73 at 10.) PGOL's general ledger notes that it received $188,000 at closing from Lakebound. (Mense Dep. Ex. 73 at 10.)

{24} Jacobson also directed that the $188,000 transfer from Lakebound be made. (Mense Dep. Ex. 82.) However, he again alleges that the transfer was a valid payment of the Paradise Resorts Debt. (Jacobson Aff. ¶ 89.) PGOL contends that the $188,000 transfer was a loan by Lakebound. (Def. PGOL's Resp. Br. to Pls.' Supplemental. Br. 2–3.)

# III.

# ANALYSIS

{25} Summary judgment under Rule 56(c) is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 353 (2009). "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citing *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)). A genuine issue is one "supported by substantial evidence" and "an issue is material if the facts alleged would constitute a legal defense." *DeWitt*, 355 N.C. at 681, 565 S.E.2d at 146. "[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000). All of the "[e]vidence presented by the parties is viewed in the light most favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

A.     Breach of Fiduciary Duty

{26}   All parties seek summary judgment on Plaintiffs' individual and derivative breach of fiduciary duty claims, which allege that (i) Jacobson owed a fiduciary duty to Lakebound and the individual Plaintiffs, and (ii) Jacobson breached these fiduciary duties by misappropriating Lakebound funds for his own personal benefit. (Pls.' Mem. Supp. Summ. J. 16–20.)

i.     Individual Claims

{27}   Generally, "[s]hareholders . . . cannot bring individual actions to recover what they consider their share of the damages suffered by the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220–21 (1997).

Instead, a claim arising from injury to a corporation is properly a derivative action, because the loss of an investment is typically identical to the injury suffered by the corporation as a whole. *See Green v. Freeman*, 367 N.C. 136, 144, 749 S.E.2d 262, 269 (2013). Under the North Carolina Limited Liability Company Act, N.C. Gen. Stat. § 57C-1-01 *et seq.*,[3] members of an LLC are treated like corporate shareholders and managers are similar to directors. *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74, 675 S.E.2d 133, 137 (2009). Managers owe fiduciary duties to the company but not to individual members. *Id.*

{28} This Court has previously explained that there are two exceptions to this rule prohibiting individual actions by LLC members:

> The North Carolina Supreme Court has recognized two exceptions to this general rule, holding that "shareholders, creditors and guarantors may bring an individual action against a third party for breach of fiduciary duty when (1) 'the wrongdoer owed [them] a special duty' or (2) they suffered a personal injury 'distinct from the injury sustained by . . . the corporation itself.' [*Green*], 367 N.C. at 142, 759 S.E.2d at 268 (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219). 'The existence of a special duty thus would be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation.' *Barger*, 346 N.C. at 659, 488 S.E.2d at 220.
>
> Significantly for this case, our courts have held that a special duty will exist 'when the wrongful actions of a party induced an individual to become a shareholder.' *Id.*

*Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at *14 (N.C. Super. Ct. Feb. 27, 2015).[4]

---

[3] Chapter 57C of the General Statutes was repealed and replaced by Chapter 57D, effective on January 1, 2014. Because this case was commenced prior to Chapter 57D's effective date, and because the parties' briefing relies on Chapter 57C, the Court elects to apply that section to its analysis. *See* N.C. Gen. Stat. § 57D-11-03(b) (2015) ("Any proceeding commenced before January 1, 2014, may be completed in accordance with the law then in effect.").

[4] Although it originally discussed fiduciary duties in the context of corporations, *Barger* and its progeny apply equally to LLCs. *See Dawson v. Atlanta Design Assocs., Inc.*, 144 N.C. App. 716, 719 n.1, 551 S.E.2d 877, 880 n.1 (2001) (applying the *Barger* rule to limited liability companies).

{29} Plaintiffs argue that they fall under the second exception and suffered an injury distinct from the LLC's injury. (Pls.' Supplemental Br. Supp. Summ. J. 4–5.) Our Supreme Court has held that injury is personal to a shareholder when a "'legal basis exists to support plaintiff's allegations of an individual loss, separate and distinct from any damage suffered by the corporation.'" *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 335, 525 S.E.2d 441, 444 (2000) (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 220). "[H]opes for profits are hardly unique," and the loss of an investment typically is identical to the injury suffered by the corporate entity as a whole. *Energy Investors*, 351 N.C. at 336, 525 S.E.2d at 444. Further, no individual injury exists on the basis of a person's unique amount of investment. *Id.* In determining whether a plaintiff experienced a distinct injury, the question is whether the plaintiff is in a less favorable position when compared to all other similarly-situated investors. *Jackson v. Marshall*, 140 N.C. App. 504, 509, 537 S.E.2d 232, 235 (2000) (citing *Energy Investors*, 351 N.C. at 336, 525 S.E.2d at 444).

{30} Plaintiffs, therefore, have the burden of presenting evidence that their injury is peculiar or personal to themselves. According to Plaintiffs' theory, each investor suffered individual harm because each investor's capital contributions were transferred from Lakebound to SilverDeer within days of deposit into Lakebound's account. (Pls.' Supplemental Br. Supp. Summ. J. 5.) For example, under this theory, Shareff claims that he was harmed individually when he made a $140,000 capital contribution to Lakebound on February 20, 2008 and Lakebound transferred $125,000 to SilverDeer on February 21, 2008. (Mense Dep. Ex. 39; Aff. Sharreff ¶ 8.)

{31} Plaintiffs have not identified any legal basis supporting their theory that the timing of these transactions makes the injury personal. Plaintiffs' alleged injury is the diminution in value of their membership interests in Lakebound, which is identical to the loss experienced by Lakebound. Plaintiffs' individual claims for breach of fiduciary duty therefore must fail as a matter of law. *See Energy Investors*, 351 N.C. at 336, 525 S.E.2d at 444 ("That [the plaintiff] invested

an amount different from other limited partners hardly makes for an 'individual injury'"); *Barger*, 346 N.C. at 659, 488 S.E.2d at 220 ("[D]iminution or destruction of the value of their shares as the result of defendants' [malfeasance] . . . is precisely the injury suffered by the corporation itself.").

{32} Plaintiffs also allege that, under the other exception identified in *Barger*, Jacobson owed them a "special duty" that was distinct from any duty he owed to Lakebound. (Pls.' Mem. Supp. Summ. J. 16–20.) A special duty is one that is personal to shareholders and separate and distinct from the duty owed to the corporation. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220. Our courts have found a special duty when a party wrongfully induced an individual to become a shareholder, when a party performed individualized services directly for the shareholder, and when a party advised shareholders independently of the corporation. *Id.* (noting that the list is illustrative); *see also Howell v. Fisher*, 49 N.C. App. 488, 498, 272 S.E.2d 19, 26 (1980), *disc. review denied*, 302 N.C. 218, 277 S.E.2d 69 (1981) (holding that stockholders' claims for wrongful inducement to invest is necessarily an individual rather than a derivative claim because the alleged negligence occurred before plaintiffs became stockholders).

{33} Here, Plaintiffs intimate that Jacobson induced them to invest in Lakebound. Shareff states that he chose to invest in Lakebound because of positive experiences investing in other entities managed by Jacobson (Shareff. Aff. ¶ 5), and Levin states that he invested in Lakebound on the advice of his financial advisor, who had a professional relationship with Jacobson. (Levin Aff. ¶¶ 4–5.) Levin acknowledges that he had no contact or communication with Jacobson prior to investing, (Levin Dep. v.1, 10–11), and Shareff indicates only that he *may* have spoken with Jacobson prior to investing in Lakebound, although he cannot identify any representation made by Jacobson (Shareff Dep. v.1, 16). Plaintiffs, however, have not identified any authority supporting a conclusion that an inducement to invest could occur without some meaningful communication prior to investment. *See, e.g., Energy Investors*, 351 N.C. at 338, 525 S.E.2d at 445 (holding that, "[a]bsent some indication whereby defendants directly solicited [plaintiff] with the

intent to induce its participation in [the partnership]," plaintiff failed to allege a special duty under *Barger*); *Howell*, 49 N.C. App. at 495–96, 272 S.E.2d at 24–25 (finding that plaintiffs sufficiently alleged inducement to invest where defendant corporation's agents personally told plaintiffs that the land the corporation intended to mine was favorable for mining and that purchase of the corporation's stock was a good investment).

{34} Plaintiffs also suggest that Jacobson owed them an individual duty because he "completely dominated" Lakebound. (Pls.' Mem. Supp. Summ. J. 19–20.) When fiduciary duties are not owed as a matter of law, a fiduciary relationship may nevertheless arise in fact when "there is confidence reposed in one side, and resulting domination and influence on the other." *Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707–08 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)); *see also Curl v. Key*, 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984) ("'[A fiduciary] relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" (quoting *Link v. Link*, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971))).

{35} Plaintiffs again suffer from the same problem that they had minimal engagement with Jacobson before Lakebound failed. Levin did not speak to Jacobson about his investment until 2009, after the Lakebound distributions ended. (Levin Dep. v.1, 13–14.) Shareff likewise cannot specifically recall any communication he had with Jacobson until the time when he demanded the return of his investment. (Shareff Dep. v.1, 15–16.) Plaintiffs' failure to demonstrate that they placed special confidence in Jacobson personally "is insufficient to take the parties' relationship . . . from arm's length to fiduciary." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 368, 760 S.E.2d 263, 267 (2014) (affirming that no fiduciary relationship existed on the basis of a loan officer's mere assertion that the plaintiffs could obtain a favorable mortgage loan); *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 621, 730 S.E.2d 763, 767 (2012) ("North Carolina courts generally find that parties who interact at arms-length do not have a

fiduciary relationship with each other . . . .”). *See also Highland Paving Co. v. First Bank*, 227 N.C. App. 37, 42–43, 742 S.E.2d 287, 292 (2013) (affirming dismissal of fiduciary duty claim when the parties’ written agreements and previous dealings failed to demonstrate that plaintiff placed “special trust and confidence” in defendant); *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992) (“[P]arties to a contract do not thereby become each others’ fiduciaries . . . .”).[5]

{36} Because Plaintiffs are unable to present evidence demonstrating that Jacobson owed them individual duties, the Court denies summary judgment as to their individual claims for breach of fiduciary duty and grants summary judgment in favor of Jacobson on the individual claims.

    ii.    <u>Derivative Claims</u>

{37} Plaintiffs also bring a derivative claim alleging that Jacobson breached his fiduciary duty to Lakebound. A manager owes a duty to the LLC to act in good faith, with the care of an ordinary prudent person in a like position, and in the manner the manager reasonably believes to be in the best interests of the LLC. N.C. Gen. Stat. § 57C-3-22 (2012). The LLC Act, N.C. Gen. Stat. § 57C *et seq.*, allows the members to limit a manger’s liability for breach of these duties. N.C. Gen. Stat. § 57C-3-32(a). However, a manager’s liability cannot be limited for acts known to be in conflict with the interests of the LLC or for acts from which the manager derived an improper personal benefit. N.C. Gen. Stat. § 57C-3-32(b). Lakebound’s operating agreement had such a provision limiting its manager’s liability to acts known to be in conflict with the LLC’s interests and acts from which the manager received an improper personal benefit. (Shareff Aff. Ex. B, hereinafter “Lakebound Operating Agreement,” § 3.7.)

---

[5] Plaintiffs have also failed to show that Jacobson’s limited relationship to them was one in which Jacobson “figuratively [held] all the cards,” an additional fatal deficiency in Plaintiffs’ claim. *See Kaplan*, 196 N.C. App. at 475, 675 S.E.2d at 138 (“[o]nly when one party figuratively holds all the cards -- all the financial power or technical information, for example -- have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.”).

{38} As an initial matter, Jacobson contends that Plaintiffs, having failed to make a demand upon the LLC, lack standing to bring a derivative claim. (Def. Jacobson's Resp. to Pls.' Supplemental Br. 3–4.) N.C. Gen. Stat. § 57C-8-01(b) dictates that a complaint must allege with particularity a member's efforts to obtain the action the plaintiff desires from the managers or the reasons for the plaintiff's failure to do so. Plaintiffs in this case have alleged that they did not make efforts under Section 57C-8-01 because Jacobson controlled the affairs of Lakebound and they feared that he would further convert the LLC's assets should demand be made. (Second Am. Compl. ¶ 75.) In interpreting Section 57C-8-01, this Court has held that an LLC "does not face the same inflexible demand requirements attendant to a derivative suit brought on behalf of a closely-held corporation." *Island Beyond, LLC v. Prime Capital Group, LLC*, 2013 NCBC LEXIS 48, at \*11–13 (N.C. Super. Ct. Oct. 30, 2013) (Gale, J.) (holding that Section 57C-8-01 was satisfied when the complaint alleged only that the defendant controlled all decision-making of the subject entity). Therefore, the Court concludes that Plaintiffs have satisfied the statute and have standing to bring a derivative claim on behalf of Lakebound. *See Crouse v. Mineo*, 189 N.C. App. 232, 244–45, 658 S.E.2d 33, 40–41 (2008) (holding that the LLC demand requirement was satisfied even when plaintiff made no effort to label the claims as derivative).

{39} Plaintiffs' derivative claim is premised on their contention that Jacobson was Lakebound's manager. Lakebound's 2009 Annual Report filed with the Secretary of State lists Jacobson as Lakebound's manager. Plaintiffs contend that North Carolina law entitles them to rely on the Annual Report as proof that Jacobson was manager:

> Any person dealing with a limited liability company . . . may rely conclusively upon its most recent annual report and any amendments to it on file with the Secretary of State as to the identity of its managers, except to the extent the person has actual knowledge that a person identified therein as a manager is not a manager.

N.C. Gen. Stat. § 57C-3-25 (2012).

{40} Jacobson asserts in response that he "was not the manager and never was the manager" of Lakebound. (Jacobson Aff. ¶ 92.) In his opposition to Plaintiffs' Motion, he identifies this as a disputed fact. (Defs.' Mem. Opp. Summ. J. 7.) Jacobson states that he signed the Annual Report in his name out of the belief that SilverDeer Management, as an entity and the alleged actual manager, could not sign the Annual Report. (Jacobson Aff. ¶ 92.) Jacobson instead points to the Lakebound Operating Agreement, which identifies SilverDeer Management as Lakebound's manager. (Lakebound Operating Agreement § 2.28.) The individual subscription agreements signed by the individual investors also identify SilverDeer Management as the manager of Lakebound, and Jacobson as the manager of SilverDeer Management. (Jacobson Aff. Ex. A.) In advancing this evidence, Jacobson essentially argues that Plaintiffs had knowledge that Jacobson was not in fact Lakebound's manager and are therefore not entitled to rely on the Annual Report under Section 57C-3-25. In light of this conflicting evidence, the Court finds that there exist genuine issues of material fact concerning whether Jacobson was Lakebound's manager and thus whether he owed fiduciary duties to Lakebound. As such, the Court denies summary judgment as to all parties on Plaintiffs' derivative claim for breach of fiduciary duty.

B. Constructive Fraud

{41} Plaintiffs seek summary judgment on their claims for constructive fraud against Jacobson. Jacobson seeks summary judgment dismissing the claims for constructive fraud.

{42} Constructive fraud arises in circumstances "where a confidential or fiduciary relationship exists." *Forbis v. Neal*, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007) (quoting *Watts v. Cumberland Cnty Hosp. Sys., Inc.*, 317 N.C. 110, 115, 343 S.E.2d 879, 884 (1986)). A plaintiff is entitled to a presumption that fraud occurred when the "superior party obtains a possible benefit through the alleged abuse of the confidential or fiduciary relationship." *Id.* at 529, 649 S.E.2d at 388. To prove a claim for constructive fraud, a plaintiff must allege "facts and circumstances (1) which created the relation of trust and confidence, and (2) [which]

led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 679 (1981). "Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty." *Governor's Club Inc. v. Governor's Club Ltd. P'ship*, 152 N.C. App. 240, 249–50, 567 S.E.2d 781, 788 (2002) (citation omitted).

{43} Having determined that Jacobson did not owe fiduciary duties to the individual Plaintiffs but that material questions of fact remain as to Jacobson's alleged fiduciary duties to Lakebound, the Court grants Jacobson's motion for summary judgment as to Plaintiffs' individual claims for constructive fraud and denies both motions for summary judgment on the derivative claim for constructive fraud. *See, e.g.*, *Green v. Condra*, 2009 NCBC LEXIS 20, at *21–22, 34–36 (N.C. Super. Ct. Aug. 14, 2009) (evaluating both individual and derivative claims for constructive fraud).

C.    Conversion

{44} Plaintiffs contend that the transfers from Lakebound to CILPS and PGOL constitute conversion. (Pls.' Mem. Supp. Summ. J. 24.) North Carolina recognizes conversion as the "unauthorized assumption and exercise of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (citation omitted). "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id.* Traditionally, claims for conversion of money could only stand if the funds could be specifically traced and identified. *Id.* at 528, 723 S.E.2d at 750. Under North Carolina law, "funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." *Id.* at 529, 723 S.E.2d at 750–51.

{45} Specifically, Plaintiffs allege conversion by Jacobson in association with the $100,000 transfer to CILPS ("CILPS Transfer") and the $188,000 transfer to

PGOL ("PGOL Transfer"). In the CILPS Transfer, Plaintiffs contend that Jacobson arranged for Erik Troan to bid on some of the OLC LLC assets in foreclosure, that Troan placed the bid and transferred the bid to CILPS, and that Jacobson transferred $100,000 from Lakebound to CILPS, which allowed him to take a 5% ownership interest individually. In the PGOL Transfer, Plaintiffs contend that Paragon was foreclosing on a portion of the Olde Liberty property, that Jacobson negotiated a deal with Paragon in which Paragon loaned PGOL funds to purchase the assets out of foreclosure, that a holding company owned by Jacobson and his family had a 33% ownership interest in PGOL, and that Jacobson transferred $188,000 from Lakebound to PGOL in order to secure Paragon's loan to PGOL.

{46} The funds allegedly converted were held by Lakebound, and Lakebound's operating agreement affirms that "[l]egal title to all Company assets shall be held in the name of the Company." (Lakebound Operating Agreement § 1.7.) As such, Plaintiffs' conversion claim can only be asserted derivatively on behalf of Lakebound. No party disputes that Lakebound owned the funds in question.

{47} "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 310–11, 603 S.E.2d 147, 165 (2004) (quoting *Hoch v. Young,* 63 N.C. App. 480, 483, 305 S.E.2d 201, 203, *disc. review denied*, 309 N.C. 632, 308 S.E.2d 715 (1983)). After making a demand, the "unqualified refusal to surrender . . . is of course a conversion." *Hoch,* 63 N.C. App. at 483, 305 S.E.2d at 203. Plaintiffs allege that because "CILPS and PGOL exercised ownership rights over [the funds] . . . each committed conversion of Lakebound's money." (Pls.' Mem. Supp. Summ. J. 25.) Plaintiffs do not allege any wrongful act by CILPS or PGOL other than possession of the funds, (Levin Dep. v.1, 9; Shareff Dep. v.1, 135–36, 152), which means Plaintiffs must have first made a demand for the return of the funds in order to sustain a conversion claim. Plaintiffs, however, have neither alleged nor offered proof of demand and refusal as

to Defendants CILPS and PGOL; thus, the Court grants summary judgment in favor of CILPS and PGOL on the conversion claim.

{48} As to Jacobson, on the other hand, Plaintiffs allege "wrongful taking." Jacobson contends that the $288,000 was not converted but instead properly distributed to SilverDeer in payment of a valid debt owed by Lakebound to SilverDeer. (Defs.' Mem. Opp. Summ. J. 23.) In the transaction giving rise to the Paradise Resort Debt, SilverDeer sold a prospective profit interest of $3,000,000 to Lakebound for a reduced price of $2,500,000, all of which was to be paid in unspecified installments after closing. Therefore, Jacobson argues, the transfer of funds from Lakebound to CILPS and PGOL was lawful as a payment of the Paradise Resort Debt owed to SilverDeer.

{49} As for the $100,000 transfer, Jacobson admits that he received a distribution in that amount from SilverDeer, and that SilverDeer received those funds from Lakebound as partial payment of the Paradise Resorts Debt. (Jacobson Aff. ¶ 94.) Plaintiffs in turn have presented evidence that Jacobson directed Lakebound's law firm to return $100,000 from its trust account to Lakebound's operating account, that the law firm deposited $100,000 into Lakebound's account (Jacobson Dep. v.1, 180–82), that SilverDeer withdrew $100,000 from Lakebound's account on November 3, 2009 (Shareff Aff. Ex. K), that the $100,000 that left the firm's trust account was eventually used as a capital contribution in CILPS (Jacobson Dep. v.1, 214), and that Jacobson owned a $100,000 interest in CILPS, (Troan Aff. Ex. C).

{50} The Court concludes that summary judgment is inappropriate at this time on the conversion claim against Jacobson based on the $100,000 transfer. Material questions of fact remain, including whether the Paradise Resorts Debt, which had no terms for repayment and was signed by Jacobson on behalf of all parties, was a valid debt that entitled Jacobson, through SilverDeer, to transfer $100,000 from Lakebound to himself.

{51} As to the $188,000 transfer, Plaintiffs have demonstrated that Jacobson directed that $188,000 be withdrawn from Lakebound's account, and that such

funds were deposited into the account of a real estate law firm. (Pls.' Mem. Supp. Summ. J. 14; Mense Dep. Ex. 82.) On the same day, PGOL's general ledger reflects a deposit of $188,000 with the notation "record amount received at closing from Lakebound." (Mense Dep. Ex. 73 at 10.) However, while Jacobson's affidavit again asserts that he was entitled to transfer that money out of Lakebound as payment on the Paradise Resorts Debt, other documents evince this transaction as a "loan" from Lakebound to PGOL. PGOL's 2009 balance sheet lists this as a liability "payable to Lakebound." PGOL's brief also categorizes this transaction as a loan. (Def. PGOL's Resp. Br. to Pls.' Supplemental. Br. 2–3.) If this transfer was a loan, rather than a payment of a debt, further questions exist as to whether the loan fell within the manager's discretion under the operating agreement or whether Jacobson received an improper personal benefit. If the transfer was in payment of the Paradise Resorts Debt, then material questions of fact remain as to the validity of that debt and whether the LLCs actually treated the transfer as a payment on the debt. Therefore, the Court concludes that material issues of fact remain, and denies summary judgment to Jacobson and Plaintiffs on the claim for conversion against Jacobson based on the $188,000 transfer.

D.    Quantum Meruit

{52}   The Second Amended Complaint seeks recovery in *quantum meruit* of "all assets, income streams and corporate opportunities diverted by Jacobson." At the hearing, Plaintiffs clarified that they have pleaded this claim alternatively.

{53}   A plaintiff may recover in *quantum meruit* "on an implied contract theory for the reasonable value of services rendered." *Horack v. S. Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 311, 563 S.E.2d 47, 52 (2002) (citation omitted). The law is settled that "an express contract precludes an implied contract with reference to the same matter." *Id.* (citing *Concrete Co. v. Lumber Co.*, 256 N.C 709, 713, 124 S.E.2d 905, 908 (1962)). Recovery in *quantum meruit*, therefore, "is not an appropriate remedy when there is an actual agreement between the parties." *Id.* (quoting *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998)).

{54} In this case, the Lakebound Operating Agreement governed Plaintiffs' rights arising from their investments in Lakebound. The Lakebound Operating Agreement further prescribed rights and obligations for Jacobson acting through SilverDeer Management. No party disputes these facts, and so the Court concludes that an actual agreement existed, which precludes recovery in *quantum meruit*. The Court therefore grants summary judgment to Defendant on this claim.

E.      Injunctive Relief

{55} "A permanent injunction is an extraordinary equitable remedy and may only properly issue after a full consideration of the merits of a case." *CB&I Constructors, Inc. v. Town of Wake Forest*, 157 N.C. App. 545, 548, 579 S.E.2d 502, 504 (2003) (citation omitted). Furthermore, Plaintiffs would only be entitled to injunctive relief if they can demonstrate that they have "no adequate remedy at law and [that] irreparable harm will result if the injunction is not granted." *Vest v. Easley*, 145 N.C. App. 70, 76, 549 S.E.2d 568, 574 (2001) (citation omitted).

{56} As a matter of timing, Plaintiffs' request for preliminary injunctive relief must fail. Since the filing of their Second Amended Complaint on February 13, 2013, Plaintiffs have not pursued their claim for preliminary injunctive relief, and as such they have not offered any evidence of irreparable harm. *See Precision Walls v. Servie*, 152 N.C. App. 630, 635, 568 S.E.2d 267, 271 (2002) (noting that a preliminary injunction is intended to preserve the status quo during litigation). Because there has not yet been a "full consideration of the merits of the case," the Court cannot grant a permanent injunction at this time. *CB&I Constructors, Inc.*, 157 N.C. App. at 548, 579 S.E.2d at 504.

{57} Plaintiffs have additionally failed to present any evidence that they lack an adequate remedy at law. In fact, all of their claims arise from the loss of the money that they invested in Lakebound and other Jacobson-affiliated entities, the recovery of which as monetary damages would be an adequate remedy at law. *See Whalehead Props. v. Coastland Corp.*, 299 N.C. 270, 283, 261 S.E.2d 899, 907–08 (1980) (discussing money damages as a legal remedy). Therefore, because the

Plaintiffs have not forecast evidence entitling them to equitable relief, the Court grants summary judgment for the Defendants on the claim for injunctive relief. *Vest*, 145 N.C. App. at 76, 549 S.E.2d at 574 (2001) (reversing denial of defendant's summary judgment motion when plaintiff sought equitable relief and had adequate remedies at law).

F.      Constructive Trust & Accounting

{58}    Plaintiffs request that the Court impose a constructive trust.

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. . . . [T]here is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise. This common element is some fraud, breach of duty or other wrongdoing by the holder of the property, or by one under whom he claims. . . .

*Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 424–25 (1988) (quoting *Wilson v. Dev. Co.*, 276 N.C. 198, 211–12, 171 S.E.2d 873, 882 (1970)).

{59}    While the imposition of a constructive trust may be appropriate at a future time, the Court cannot grant summary judgment to any party on the Plaintiffs' request for a constructive trust because it has not at this point conclusively found wrongdoing by Defendants. That no legal claims survive against CILPS and PGOL is not fatal to Plaintiffs' ability to obtain a constructive trust against them as holders of the allegedly misappropriated funds. Our Supreme Court has held that "continued acceptance of . . . funds [when the defendant breached no duty but had constructive notice of the disputed ownership] could be considered unconscientious or inequitable and could thus permit the imposition of a constructive trust." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 531, 723 S.E.2d 744, 752 (2012). *See also Houston v. Tillman*, 760 S.E.2d 18, 22 (N.C. Ct. App. 2014) ("Indeed, the Supreme Court's application of the constructive trust doctrine in *Variety Wholesalers* establishes that actual wrongdoing, such as fraud or breach of fiduciary duty, is not necessary for imposition of a constructive trust.")

After fact finding regarding the underlying events in this case, "the ultimate decision whether to impose a constructive trust as an equitable remedy would rest in the discretion of the trial court." *Variety Wholesalers*, 365 N.C. at 531, 723 S.E.2d at 752. Therefore, the Court denies summary judgment as to all parties on this claim.

IV.

CONCLUSION

{60}  For the foregoing reasons:

1. Plaintiffs' Motion for Summary Judgment is **DENIED**;

2. Defendants' Cross-Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**;

3. Plaintiffs' individual claims for breach of fiduciary duty are **DISMISSED with prejudice**;

4. Plaintiffs' individual claims for constructive fraud are **DISMISSED with prejudice**;

5. Plaintiffs' individual claims for conversion are **DISMISSED with prejudice**;

6. Plaintiffs' derivative claims for conversion against Defendants CILPS and PGOL are **DISMISSED with prejudice**

7. Plaintiffs' claims for recovery in *quantum meruit* are **DISMISSED with prejudice**;

8. Plaintiffs' claims for injunctive relief are **DISMISSED with prejudice**; and

9. Plaintiffs' following claims and remedies survive:

   a. Constructive trust and accounting;

   b. Breach of fiduciary duty (derivative);

   c. Constructive fraud (derivative); and

   d. Conversion (derivative) against Defendant Jacobson based on the $100,000 transfer and the $188,000 transfer.

{61}  Consistent with the parties' Joint Status Report and Proposal, *Levin v. Jacobson*, Wake County No. 10-CVS-12062 (N.C. Super. Ct. Jan. 30. 2015), the

Court will issue an order in the related case, *Shareff v. Jacobson*, Wake County No. 09-CVS-9983 (the "Shareff Action"), setting forth a short supplemental briefing schedule on the Motion to Consolidate in the Shareff Action.  After resolution of the Motion to Consolidate in the Shareff Action, the Court will schedule this matter for trial.

SO ORDERED, this the 7th day of December, 2015.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases